**Hattie HALL, Plaintiff-Appellee,**

v.

**SECRETARY, HEALTH, EDUCATION AND WELFARE,**
**Defendant-Appellant.**

No. 77–1148.

United States Court of Appeals,
Sixth Circuit.

Argued April 5, 1979.

Decided and Filed June 18, 1979.

Patrick H. Molloy, U. S. Atty., Richard E. Duerr, Jr., Asst. U. S. Atty., Lexington, Ky., Anthony J. Steinmeyer, John F. Cordes, App. Section, Civ. Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Kelsey E. Friend, Jr., Pikeville, Ky., for plaintiff-appellee.

Before LIVELY and MERRITT, Circuit Judges, and BROWN,* District Judge.

LIVELY, Circuit Judge.

The question in this case is whether the Secretary of Health, Education and Welfare (HEW) properly processed and determined the claim for black lung benefits

---

* The Honorable Bailey Brown, Chief Judge, U.S. District Court for the Western District of Tennessee, sitting by designation.

filed by the widow of a miner. The claimant's husband died before January 1, 1974 and she filed her claim for benefits between July 1, 1973 and December 31, 1973. These facts brought into play section 415 of the Black Lung Benefits Act of 1972. Section 415 is codified at 30 U.S.C. § 925 (1976) and prescribes procedures to be followed in processing claims filed during the "transition period" for transfer of administrative responsibility for black lung benefits claims from the Secretary of HEW to the Secretary of Labor.

Under the Federal Coal Mine Health and Safety Act of 1969 (as amended by the Black Lung Benefits Act of 1972), 30 U.S.C. § 921 et seq. (1976) (the Act), benefits are provided, *inter alia,* for the widow of a miner who was receiving benefits at the time of his death, or who is determined to have been totally disabled due to pneumoconiosis at the time of his death, or whose death was due to pneumoconiosis. Hattie Hall filed an application for black lung benefits with a local Social Security office on August 28, 1973, as the widow of Henry Hall, a former coal miner who died on February 5, 1965. In her application Mrs. Hall asserted that her husband was totally disabled due to pneumoconiosis at the time of his death. After processing the application according to customary procedures the Department of Health, Education and Welfare made an administrative determination that Hattie Hall was not entitled to benefits. Upon reconsideration, the Appeals Council of HEW affirmed the denial and this became the final decision of the Secretary of HEW.

Hattie Hall then filed a complaint in the district court, contending that her claim was wrongfully denied. After an answer was filed on behalf of the Secretary of HEW the parties made cross-motions for summary judgment. In accordance with its practice the district court referred the matter to a magistrate for preliminary review and a report and recommendation. 28 U.S.C. § 636(b) (1976). The magistrate noted that the claim had been filed during the "transition period" and concluded that 30 U.S.C. § 925 vested exclusive jurisdiction in the Secretary of Labor to adjudicate all claims filed during this period. The magistrate found that the decision was void *ab initio* and recommended that the cause be remanded to the Secretary of HEW with directions to transfer the application to the Secretary of Labor for consideration anew.

Though both the claimant and the Secretary of HEW filed exceptions, the district court followed the recommendation of the magistrate, holding ". . . it is clear that the Secretary of Labor, not the Secretary of HEW, must adjudicate all claims filed within the transition period." Accordingly, the district court remanded the action "to the Secretary of HEW with specific directions to transfer the application for *de novo* consideration to the Secretary of Labor, 30 U.S.C. § 925(a)(2)."

The Secretary of HEW appealed to this court, and the claimant Hattie Hall, though the appellee, joined in the prayer of the appellant for reversal. In addition, the Secretary of Labor has filed an *amicus curiae* brief urging reversal. The primary thrust of their arguments is that, though its meaning may be clear when it is read alone, the transition period section, 30 U.S.C. § 925, is ambiguous when read in conjunction with other provisions of the amended Black Lung Act. The two Secretaries then contend that they adopted a reasonable interpretation when faced with a statutory conflict.

By way of background we quote from our previous decision in *Ohio River Collieries v. Secretary of Labor,* 558 F.2d 353 (6th Cir. 1977), in which we dealt with the claim of a living miner who filed for benefits during the transition period:

> The general statutory scheme for dealing with the black lung problem provided federal benefits for miners who were already disabled from pneumoconiosis at the time the legislation was enacted in 1969. 30 U.S.C. §§ 901–924 (1970). These benefits were to be obtained by filing under part B of Subchapter IV of the Act prior to January 1, 1973. Those who filed on or after January 1, 1973 and

qualified for benefits—presumably miners who had recently become disabled—were to be compensated pursuant to part C of Subchapter IV. 30 U.S.C. §§ 931–936. Under part C liability was shifted to coal operator-employers of claimants, and administration of the program was transferred from the Secretary of Health, Education and Welfare to the Secretary of Labor. It was contemplated that the states would provide coverage through workmen's compensation. Where such coverage did not meet the requirements of the Act, claims would be processed under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq.

The 1969 Act was extensively amended in 1972. The period of federal liability was extended by amendment which made part B applicable to all claims filed on or before December 31, 1973 and part C applicable to claims filed after that date. The amendments added a new section to the Act, codified as 30 U.S.C. § 925 (1970 Supp. II), which established the procedure for determination of claims during the "transition period" from July 1, 1973 to December 31, 1973, as follows:

(a) Notwithstanding any other provision in this subchapter, for the purpose of assuring the uninterrupted receipt of benefits by claimants at such time as responsibility for administration of the benefits program is assumed by either a State workmen's compensation agency or the Secretary of Labor, any claim for benefits under this part filed during the period from July 1, 1973 to December 31, 1973, shall be considered and determined in accordance with the procedures of this section. With respect to any such claim—

(1) Such claim shall be determined and, where appropriate under this part or section 934 of this title, benefits shall be paid with respect to such claim by the Secretary of Labor.

(2) The manner and place of filing such claim shall be in accordance with regulations issued jointly by the Secretary of Health, Education, and Welfare and the Secretary of Labor, which regulations shall provide, among other things, that such claims may be filed in district offices of the Social Security Administration and thereafter transferred to the jurisdiction of the Department of Labor for further consideration.

(3) The Secretary of Labor shall promptly notify any operator who he believes, on the basis of information contained in the claim, or any other information available to him, may be liable to pay benefits to the claimant under part C of this subchapter for any month after December 31, 1973.

(4) In determining such claims, the Secretary of Labor shall, to the extent appropriate, follow the procedures described in subsections (b), (c), and (d) of section 919 of Title 33.

(5) Any operator who has been notified of the pendency of a claim under paragraph 4 of this subsection shall be bound by the determination of the Secretary of Labor on such claim as if the claim had been filed pursuant to part C of this subchapter and section 932 of this title had been applicable to such operator. Nothing in this paragraph shall require any operator to pay any benefits for any months prior to January 1, 1974.

(b) The Secretary of Labor, after consultation with the Secretary of Health, Education, and Welfare, may issue such regulations as are necessary or appropriate to carry out the purpose of this section. *Id.* at 354–55.

The appellant and *amicus* agree that the claim of a living miner which is filed during the transition period must be processed and adjudicated by the Secretary of Labor. They contend, however, that certain provisions of 30 U.S.C. § 924 (1976) indicate that claims for survivors' benefits which are filed during this period should be processed and adjudicated by the Secretary of HEW. They point particularly to 30 U.S.C. § 924(b) and (e). These subsections, since the 1972 amendments which extended Part B coverage to December 31, 1973, have provided—

(b) No benefits shall be paid under this part after December 31, 1973, if the claim therefor was filed after June 30, 1973

\* \* \* \* \* \*

(e) No benefits shall be payable to a widow, child, parent, brother or sister under this part on account of the death of a miner unless (1) benefits under this part were being paid to such miner with respect to disability due to pneumoconiosis prior to his death, or (2) the death of such miner occurred prior to January 1, 1974.

The appellant and *amicus* appear to argue that the right of a widow of a miner who died before January 1, 1974 to claim benefits under Part B (which provides benefits as long as the survivor is eligible) pursuant to § 924(e), *supra,* would be lost if she were required to file pursuant to 30 U.S.C. § 925. It is contended that if she is required to file pursuant to § 925 the stricture of § 924(b) applies and her Part B benefits would cease on December 31, 1973 and she would be required to refile under Part C on January 1, 1974.

We believe the parties have misread § 925. Its opening sentence is: *"Notwithstanding any other provision in this subchapter* [Subchapter IV of the Federal Coal Mine Safety and Health Act of 1969], for the purpose of assuring the uninterrupted receipt of benefits by claimants at such time as responsibility for administration of the benefits is assumed by either a State workmen's compensation agency or the Secretary of Labor, *any claim for benefits* under this part [Part B] filed during the period from July 1, 1973 to December 31, 1973, *shall be considered and determined in accordance with the procedures of this section."* (emphasis added). Hattie Hall's claim was for benefits under Part B since Henry Hall died before January 1, 1974. (§ 924(e)). Therefore the plain language of § 925 required that the claim be considered and determined in accordance with the procedures set forth in that section, "notwithstanding any other provision" of the black lung benefits law. The first of the procedures established by § 925 is:

(a)  .  .  .
With respect to any such claim—
(1) Such claim shall be determined, and where appropriate *under this part* [Part B] or section 934 of this title, benefits shall be paid with respect to such claim by the Secretary of Labor. (emphasis added).

The second procedure set forth in § 925 requires that claims filed in district offices of the Social Security Administration be "transferred to the jurisdiction of the Department of Labor for further consideration." § 925(a)(2).

■ If the widow of a miner who died prior to January 1, 1974 files during the transition period, and is determined to be entitled to benefits under Part B, these benefits would not cease on December 31, 1973 as contended by the Secretary of HEW. Once a determination was made that the survivor was entitled to benefits under Part B, these benefits would continue to be paid *by the Secretary of Labor* as long as the survivor remains eligible to receive them. This was our holding in *Ohio River Collieries, supra,* 558 F.2d at 357, with respect to a living miner's claim, and we can perceive no reason for treating a survivor's claim differently. Section 925(a)(1) makes the Secretary of Labor the source of payments whether the claimant qualifies under Part B or Section 934, which relates to payments from the Black Lung Disability Trust Fund.

■ The change wrought by § 925 is purely procedural. It accelerates the entry of the Department of Labor into the administrative process by six months. It makes no substantive changes in the law. If a widow files under Part B during the transition period she is entitled to have her claim judged by the criteria, including presumptions, applicable to all other claims filed on or before December 31, 1973. The only difference is that it will be processed and determined by Labor, rather than HEW, using the procedures of the Longshoremen's and Harbor Workers' Compensation Act.

The Secretary of HEW argues that since a separate provision of the law (30 U.S.C. § 924(a)(1)), permits widows to obtain Part B benefits on claims filed as late as July 1, 1974, whereas living miners may only be permitted Part B treatment if they apply by December 31, 1973, the transition period procedures do not apply to claims of widows. This is a *non sequitur.* The fact that a widow of a miner who died between July 1, 1973 and January 1, 1974 may claim benefits under Part B by filing within six months after the miner's death, which may be later than December 31, 1973, does not affect the treatment of those survivors' claims actually filed within the transition period. The Secretary of Labor must process all claims filed after July 1, 1973 and pay any benefits found to be due. The Secretary of HEW has no function except to transfer transition period claims to the Secretary of Labor.

In spite of the clear direction of § 925 the Secretary of HEW and the Secretary of Labor have consistently followed the practice of permitting survivors' claims filed during the transition period to be adjudicated by HEW. They have issued joint regulations for filing and processing claims after June 30, 1973. See 20 C.F.R. §§ 717.1–717.-125 (1978). These regulations recognize the authority of the Secretary of Labor over claims filed during the transition period, but a separate regulation of the Department of Labor provides that all claims filed during the period which are predicated upon the death of a miner "shall be filed, processed, and paid pursuant to the provisions contained in Part 410 of this Title." Part 410 refers to regulations of HEW which apply to processing and determining claims for benefits under Part B of the 1969 Act as amended. This regulation is cited as authority for the procedure which has been followed. However, it can only be construed to require that the substantive requirements of Part B be applied, since § 925 unequivocally requires that a different procedural pattern be followed.

Both Secretaries argue that their mutually consistent interpretation of § 925 as not applying to survivors' claims filed during the transition period is reasonable and should be accepted by the court. We are fully aware of the deference due the construction placed on a statute by an agency charged with responsibility for administering it. *Train v. Natural Resources Defense Council,* 421 U.S. 60, 87, 95 S.Ct. 1470, 43 L.Ed.2d 731 (1975); *Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 13 L.Ed.2d 616 (1965); *Begley v. Mathews,* 544 F.2d 1345, 1352–53 (6th Cir. 1976), *cert. denied,* 430 U.S. 985, 97 S.Ct. 1684, 52 L.Ed.2d 380 (1977). Nevertheless, the requirement of deference disappears when agency interpretation is "inconsistent with an obvious congressional intent . . . ." *Espinoza v. Farah Mfg. Co.,* 414 U.S. 86, 94, 94 S.Ct. 334, 339, 38 L.Ed.2d 287 (1973). As this court stated in *Hilliard v. United States,* 310 F.2d 631 (6th Cir. 1962), a court may not discover a congressional intent, under the guise of statutory construction, which is contrary to the clear language of the statute itself. "Where a statute is unambiguous, it should be given effect according to its literal language." *Id.* at 632. The rule is different where the statutory language is not clear. See *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643–50, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978). In such cases, the literal language is not always controlling. However, we find no ambiguity in § 925. It provides the procedure for processing and deciding *any claim* filed within the transition period. The purported ambiguity exists only if one ignores the explicit command of § 925 that all claims filed during this period are to be considered and determined in accordance with its procedures *notwithstanding any other provision* of the Black Lung Act. To us this means that any conflicting provisions must give way to the dictates of § 925. We have no doubt that this is what the 92nd Congress meant when it adopted § 925.

Finally the Secretaries rely upon the fact that the legislative history of the 1977 amendments to the Act contains a statement by the Senate Committee on Human Resources that it approved the practice of HEW determining survivors' transition pe-

riod claims as consistent with congressional intent. This "clarification" by a committee of the 95th Congress is as follows:

### Claims Under Section 415

Some confusion has arisen over the nature of the Section 415 transition provisions and their applicability to claims filed between July 1 and December 31, 1973. The Committee does not feel that amendments to Section 415 are necessary; however, a clarification of the meaning of this section is in order. Of greatest significance is the point that we did not intend that survivors of miners would file claims pursuant to Section 415. It was intended that survivors claims filed between July 1, and December 31 would be filed, processed and paid by the Social Security Administration pursuant to Sections 411–414 of the Act, and the practices and regulations of both the Departments of Labor and Health, Education, and Welfare correctly reflect this intent. In addition, it was intended that claims filed during this period would be subject to the adjudicatory provision of Section 422 of Part C and the eligibility provisions of Part B. Section 415 was placed in Part B and specifically incorporated the adjudication provision of Section 422 to effect this purpose. Finally, it was intended that claims filed during the period would be the liability of coal operators for all periods of eligibility beginning on January 1, 1974.

Sen.Rep.No.95–209, Committee on Human Resources, May 16, 1977. (References to Section 415 are to 30 U.S.C. § 925).

This report raises the interesting question of whether one Congress has the power to construe an enactment of a previous Congress in a manner which is inconsistent with its plain meaning and the contemporaneous construction of the enacting body.[1] Rather than concern ourselves with this doctrinal problem we must attempt to find a workable solution for a situation which has been created by an apparent determination to place administrative convenience above the clear command of the statute. If Section 925 had been followed as written, the public would have benefited. A single procedure would have been provided for both Part B and Part C claims filed during the transition period. Where state workmen's compensation laws did not qualify, the established compensation machinery of the federal government which operates under the Longshoremen's and Harbor Workers' Compensation Act, as amended, 33 U.S.C. § 901 et seq. (1976), would have been utilized for all claims. The standard set forth in Part B of the Act would have applied to claims which qualified for such treatment and the standards for Part C would have controlled otherwise. There is no apparent reason why claims of survivors could not have been administered in this manner.

The Supreme Court has written that the determinative question is not what an agency created by Congress thinks it should do, but "what Congress has said it can do." *Civil Aeronautics Board v. Delta Air Lines,* 367 U.S. 316, 322, 81 S.Ct. 1611, 1617, 6 L.Ed.2d 869 (1961). Nevertheless, we are informed that more than 10,500 widows' transition claims have been administered by HEW. To require that all these be refiled and reconsidered by Labor would be to cause the very sort of duplication which Congress sought to avoid in adopting § 925 "for the purpose of assuring uninterrupted receipt of benefits by claimants . . . ."

We doubt that jurisdiction in the strict sense is involved in this case. Rather it is a question of the delegation of powers by Congress. The Supreme Court has upheld the delegation of judicial powers to administrative bodies. See *Sunshine Anthracite Coal Co. v. Adkins,* 310 U.S. 381, 400, 60 S.Ct. 907, 84 L.Ed. 1263 (1940).

---

1. In its discussion of "Administration in Transition Year" Sen.Rep.No.92–743, reprinted in 2 U.S.Code Cong. & Admin.News, 92nd Cong. Second Sess. (1972) at 2305, 2329–30, made no distinction between claims of living miners and those of survivors. It stated that "new claims filed during the transition year shall be administered by the Secretary of Labor rather than the Secretary of Health, Education and Welfare."

Congress has delegated such powers both to HEW and Labor under the Black Lung Act. Both departments have been entrusted with authority to decide claims for benefits for coal workers' pneumoconiosis. Though the procedures employed by the two departments in processing and determining claims are not the same, they are required to apply the same substantive law. In view of HEW's long involvement in black lung benefit claims it is not to be presumed that the provisions of the Act have been applied more restrictively by HEW than they would have been by Labor. From these facts we conclude that HEW was not without jurisdiction to hear and determine the claim of Hattie Hall, and that its decision is not void.

Since the claimant in the present case has clearly indicated her preference for the HEW adjudication, the judgment of the district court will be vacated and the cause will be remanded with directions to consider this case on the merits. However, all claims for survivors' benefits which were filed during the transition period and which have not been finally decided by HEW are subject to transfer to Labor at the option of the claimants. All claimants for survivors' benefits who filed with HEW between July 1, 1973 and December 31, 1973, and whose cases have not been finally decided, will be notified by HEW of this option and will be given a reasonable time in which to elect whether or not to require that their claims be transferred to Labor for processing and determination in accordance with 30 U.S.C. § 925(a). This procedure would appear to provide a reasonable method for achieving the original aim of Congress in enacting § 925 in situations where the literal command of the statute cannot be obeyed.

The judgment of the district court is vacated and the cause is remanded for further proceedings as set forth in this opinion.