**In re 163RD STREET MINI STORAGE, INC., Debtor.**

**Bankruptcy No. 90–11229–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida.

April 9, 1990.

Robert E. Venney, Shutts & Bowen, Miami, Fla., for debtor.

Steven Mishan, Mishan, Sloto, Hoffman, et al., Miami, Fla., for Professional Sav. Bank, et al.

Alan J. Perlman, Greenberg, Traurig, et al., Miami, Fla.

**ORDER PROHIBITING DEBTOR'S USE OF CASH COLLATERAL AND REQUIRING TURNOVER OF RENTS**

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came before the Court for hearing in Miami on Thursday, March 22, 1990, upon the Debtor's Motion for Use of Cash Collateral, and the objection to that Motion interposed by secured creditor Professional Savings Bank. Also scheduled for hearing was the Debtor's Motion to Approve Construction Contract and Interim Administrative Financing. The Court having examined the evidence presented, considered the arguments of counsel, and being otherwise duly advised in the premises, does hereby make the following Findings of Fact and Conclusions of Law:

The facts relevant to the instant motion are not in dispute. The Debtor owns and operates a mini-storage warehouse facility which consists of a two-story brick building and the underlying real property (collectively, the "Property"). Although the Property is encumbered by three mortgages, the Court shall limit its discussion to the issues raised by the first mortgagee, Professional Savings Bank ("Professional").

On February 10, 1988, the Debtor executed and delivered a Promissory Note ("Note") and a Mortgage and Security Agreement ("Mortgage") securing payment of the Note to Professional. The Mortgage contained a provision for the absolute assignment of the rents, leases and security deposits payable to the Debtor under leases of storage space to third parties. On February 9, 1989, the maturity date of the Mortgage, the Debtor executed and delivered to Professional a Note and Mort-

gage Extension Agreement extending the maturity date to August 9, 1989.

The Debtor defaulted under the terms of the Mortgage, as extended, by failing to make the payment due in July, 1989, and each and every month thereafter. Furthermore, the Debtor failed to pay the outstanding balance of approximately $1,200,-000 when the extended loan matured on August 9, 1989. Shortly thereafter, Professional commenced a foreclosure action against the Debtor in Dade County Circuit Court, and made a demand for the turnover of rents under the assignment of rents clause in the Mortgage, pursuant to § 697.07, Fla.Stat.

The Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code on February 26, 1990, thereby staying the foreclosure proceedings in the Circuit Court. On March 2, 1990, the Debtor promptly filed a motion under Section 363(c)(2) of the Bankruptcy Code, 11 U.S.C. § 363(c)(2), and Bankruptcy Rule 4001(b), requesting the Court to authorize the use of cash collateral derived from the Property. Professional filed an Objection to the Debtor's use of cash collateral and the matter was set for hearing.

On March 13, 1990, a hearing was held on the Debtor's Motion for Use of Cash Collateral ("Motion") and the Objection filed by Professional. The hearing was continued to March 15, 1990. Due to the arguments presented by Professional and the authority cited in support thereof, the Court permitted counsel for the Debtor to file a Brief in Support of its Motion for Use of Cash Collateral, and continued the hearing to a third date, March 22, 1990.

On March 22, 1990, this Court conducted its final hearing concerning the Motion and Objection. The central issue addressed at that hearing and in this opinion is whether the mortgagee's issuance of the notice provided in § 697.07, Fla.Stat., creates an absolute transfer of the ownership interest of the rents derived from the mortgaged property, such that those rents are not property of the Debtor's estate under Section 541(a) of the Bankruptcy Code, 11 U.S.C. § 541(a),

and accordingly not cash collateral as defined in 11 U.S.C. § 363(a).

This threshold issue must be resolved prior to addressing the cash collateral issue raised by the Debtor's Motion. If, as Professional contends, the effect of its § 697.07 notice is to transform the collateral assignment of rents into an absolute assignment, then the rents are neither property of the estate nor cash collateral, and the Motion must be denied.

The issue appears to be one of first impression within this District. In *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), the Supreme Court concluded that the rights to rents and profits derived from mortgaged property is to be determined by the laws of the state in which the property is located, rather than by federal law. Accordingly, the Court must apply Florida law, specifically § 697.07, Fla.Stat., to the case at bar.

The Florida assignment of rents statute, § 697.07, became effective on October 1, 1987. Of the few reported cases addressing the statute, most have focused on the issue of whether it is to be applied retroactively or only prospectively. *See In re Camelot Associates, Limited Partnership*, 102 B.R. 161, 166 (Bankr.D.Minn.1989); *In re Mears*, 88 B.R. 419, 421 (Bankr.S.D. Fla.1988); *In re Aloma Square, Inc.*, 85 B.R. 623, 625 (Bankr. M.D. Fla.1988). Since the Note and Mortgage to Professional were executed subsequent to the effective date of the statue, the question of retroactive application, and a good deal of the existing case law, is irrelevant to the issue at hand.

Prior to the enactment of § 697.07, Florida common law provided that a mortgagee was not entitled to any of the rents and profits derived from the property unless it had obtained an order of sequestration or actually taken possession of the property, either by consent or the appointment of a receiver. *See In re Executive Square Ltd.*, 77 B.R. 303, 304 (Bankr. S.D.Fla. 1987) (quoting, in part, *White v. Anthony Investment Co.*, 119 Fla. 108, 109, 160 So. 881, 882 (1935)); *In re Hamlin's Landing Joint Venture*, 77 B.R. 916, 919–20 (Bankr.

M.D.Fla.1987); *In re Parham,* 72 B.R. 604, 605–06 (Bankr. M.D.Fla.1987); *Bornstein v. Somerson,* 341 So.2d 1043, 1048–49 (2d DCA 1977).

The above decisions must now be reexamined in light of the enactment of § 697.07, the pertinent portion of which provides:

A mortgage may provide for an assignment of rents. If such assignment is made, such assignment *shall be absolute* upon the mortgagor's default, becoming operative upon written demand made by the mortgagee.

§ 697.07, Fla.Stat. (1987) (emphasis added).

As indicated, Professional contends that upon the Debtor's default and its own compliance with the written demand provisions of § 697.07, the collateral assignment of rents became absolute, such that the postpetition rents are not "cash collateral." In opposition, the Debtor primarily relies upon the decision in the case of *In re One Fourth Street North, Ltd.,* 103 B.R. 320 (Bankr.M.D.Fla.1989), in which Chief Judge Paskay addressed the same argument raised here by Professional and concluded that although the statutory language suggested precisely that result, the statute "was not meant to create an outright or absolute transfer of ownership interest...." *Id.* at 321.

This Court is of the opinion that § 697.07 does in fact create an absolute transfer of the ownership interests in the rents, and accordingly disagrees with Judge Paskay's decision in *In re One Fourth.*

The statute's legislative history consists of the legislative analysis for House Bill 1153, enacted into law by the Legislature as § 697.07. The Bill reflects that the drafters of the statute were specifically concerned with the problems encountered by mortgagees in enforcing assignment of rents clauses:

Despite ... [the fact that Florida specifically authorizes certain lending institutions to require assignments of rents and to enforce them as security for loans granted], Florida courts have consistently ruled that the Mortgagor is entitled to ... continue to receive the rents from such property until final disposition through a completed foreclosure. (Citations omitted) The refusal of courts to permit enforcement of assignment of rents has resulted in mortgage lenders becoming reluctant to seek enforcement of instruments containing such clauses.

Final Staff Analysis, H.B. 1153, p. 108 (June 17, 1987).

It is obvious that the drafters were aware of Florida's common law concerning the assignments of rents. The legislative analysis goes on to state that "[s]ection 697.07, Florida Statutes, is created to provide that any mortgage may contain an assignment of rents, and where such assignment is made it shall be absolute upon default of the mortgagor. The assignment shall become operative upon written demand by the mortgagee." *Id.*

From this history, the Court concludes that after recognizing the problems in enforcing assignments of rents under Florida common law, the Legislature enacted § 697.07 for the specific purpose of solving those problems. As a new law, § 697.07 would remedy the enforcement problem by enabling and authorizing the mortgagee to enforce its assignment of rents clause without the need for the foreclosure proceeding.

As additional support for this conclusion, the legislative history reflects an intention to create precisely the "absolute transfer" urged by Professional:

[Upon default] [t]he mortgagor will *lose* the right to receive the rents which were assigned under the contractual terms and agreed to prior to the default.

\*     \*     \*     \*     \*     \*

The proposed legislation would create a simple, equitable and inexpensive method by which assignment of rents contracts could be *enforced* by a mortgage lender.

Final Staff Analysis, H.B. 1153, pp. 109–110 (June 17, 1987) (emphasis added). Nowhere does the legislative history contain any reference to "perfection"; in fact, by employing such terms as "absolute" and "enforced," it is obvious that the drafters

did not intend to deal with the issue of perfection, but with an absolute transfer of ownership of the rents. Upon exhaustive review of the legislative history, the Court concludes that the Legislature was well aware of existing law and intended to provide a simple, equitable and inexpensive procedure for mortgagees to enforce provisions calling for the assignment of rents.

The Court's interpretation of § 697.07 also receives support from existing case law. *See generally In re Camelot Associates Ltd., Partnership*, 102 B.R. 161, 165 (Bankr.D.Minn.1989) ("Fla.Stat. § 697.07 makes all Florida assignments of rents into absolute transfers of the ongoing income stream, enforceable after the mortgagor's default upon the mortgagee's subsequent written demand"); *In re Aloma Square, Inc.* 85 B.R. 623, 625–26 (Bankr.M.D.Fla. 1988) (prohibiting debtor's use of cash collateral upon finding that after § 697.07 demand for turnover of rents, lender was not affected by the automatic stay, thereby implying that rents derived from property were not property of that debtor's estate); *Executive Square, Ltd. v. Delray Executive Square Ltd.*, 546 So.2d 434 (3d DCA 1989) (assignment of rents became absolute upon default and operative upon written demand).

In reaching this result, the Court has considered and rejected the Debtor's contention that the remaining text of § 697.07 supports an interpretation that it does not contemplate an absolute transfer of ownership rights in the rents. The pertinent language of § 697.07 provides that:

> Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.

§ 697.07, Fla.Stat. (1987).

The Debtor's argument is once again misplaced. The cited language contemplates a scenario in which the mortgagor refuses to turn over the rents after demand. In such case, the mortgagee has the ability to require the mortgagor to deposit the rents into the registry of the court pending adjudication of the mortgagee's rights, a process which may ultimately take several months.

The Court also rejects the Debtor's argument that notwithstanding the foregoing interpretation of § 697.07, the equities of the case authorize the Court to allow the use of rents as cash collateral under 11 U.S.C. § 363(c)(2). The Debtor and Professional voluntarily entered into the Note and Mortgage. The Mortgage contained an assignment of rents clause governed by § 697.07, Fla.Stat. It would be utterly improper for the Court to rewrite the Note and Mortgage in order to revive in the mortgagor rights which have passed to the mortgagee by operation of the § 697.07 demand. *Principal Mutual Life Insurance Co. v. Lamb*, 552 So.2d 1156, 1157 (3d DCA 1989).

In summary, the Court is persuaded by the limited case law and available legislative history that § 697.07 is intended to create an absolute transfer of the income stream to the mortgagee, upon default and written demand to the mortgagor, such that the rents derived from the Property are not "cash collateral" within the scope of 11 U.S.C. § 363(a). Accordingly, it is hereby:

ORDERED AND ADJUDGED:

1. That the Debtor's Motion for Use of Cash Collateral be and hereby is DENIED;

2. That the Debtor shall forthwith account for turn over to Professional Savings Bank all rents, and other proceeds derived from the Property, and shall continue to account turn over such future rents and other proceeds immediately upon receipt; and

3. That in accordance with this opinion the Debtor's Motion to Approve Construction Contract and Interim Administrative Financing is hereby DENIED as moot,

since that Motion had requested the use of cash collateral derived from the Property; provided, however, that said denial is without prejudice to the Debtor's right to refile a similar motion that does not request the use of rents or other income derived from the Property.

DONE AND ORDERED.