### In re THYMEWOOD APARTMENTS, LTD.

**Jointly Administered With Blossom Corners Apartments II, Ltd., Bel Aire Apartments II, Ltd., Bel Aire Apartments, Ltd., Centre Lakes Apartments, Ltd., Centre Lakes Apartments II, Ltd., Centre Lakes Apartments III, Ltd.**

Nos. C–2–90–0810 to C–2–90–0816.

United States District Court,
S.D. Ohio, E.D.

Jan. 31, 1991.

---

Todd Marti, Schottenstein, Zox & Dunn, Columbus, Ohio, for appellant.

Carol Stebins, David Korn, Jones, Day, Reavis & Pogue, J. Andrew Merkle, Denmead, Blackburn & Willard, Columbus, Ohio, for appellee.

OPINION AND ORDER

KINNEARY, Senior District Judge

This matter comes before the Court to consider the consolidated appeal from the ruling of the bankruptcy court below by the appellants, Amerifirst Federal Savings Bank ("Amerifirst"). This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. 28 U.S.C. § 158(a) (1988); Bankr.R. 8001.

The appellees in this case are Thymewood Apartments, Ltd., Blossom Corners Apartments II, Ltd., Bel Aire Apartments, Ltd., Bel Aire Apartments II, Ltd., Centre Lake Apartments, Ltd., Centre Lake Apartments II, Ltd., and Centre Lake Apartments III, Ltd. Because the issues presented by these cases are identical,[1] for the sake of expediency the Court will enumerate briefly the facts for one representative case.

The first case, which involves the mortgagor Thymewood ("Debtor"), began on December 5, 1984, when the Debtor executed and delivered to Cardinal Industries Mortgage Company ("CIMC") a promissory note in the principal amount of $2,500,-000.00, which was secured by a mortgage on real property upon which the Debtor intended to build an apartment complex. After recordation, the note was assigned to the mortgagee in this dispute, Amerifirst. Subsequent to the assignment, the mortgagor went into default on the note, and, on May 5, 1989, Amerifirst sent notice of default and a demand for immediate payment of all rents pursuant to an assignment of rents clause[2] contained in the mortgage agreement, and a Florida statute which purports to allow for an absolute and unconditional assignment of rents generated from mortgaged property to the holder of the mortgage upon default by the mortgagor and notice by the mortgagee. Fla.Stat. § 697.07 (1989). The Debtor responded by paying to Amerifirst the rents collected from its tenants for approximately one year, which included several months of payment immediately following its petition for reorganization. As of August 1, 1990, a total of $2,726,563.11 was due Amerifirst from the Debtor, exclusive of default interest and attorney fees.

In the court below, *In re Cardinal Industries, Inc.*, 118 B.R. 971 (Bankr.S.D. Ohio 1990), the central issue was the nature and extent of each lenders' interest in the rents generated from the property against which it held an assignment of rents for which the statutory notice under Florida law had been given. *Id.* at 976. The court concluded that section 697.07 was not meant to provide for an absolute transfer of ownership rights in rents upon default by a debtor. Rather, the statute "merely eliminates the mortgagee's need to obtain an order sequestering the rents or to take possession of the property prior to a right to receive the rents after the mortgagor's default." *Id.* at 979.

---

1. Although all the cases before the Court in this proceeding are identical with respect both to the statutory and contractual issues, the mortgage agreement considered in *In re Blossom Corners Apartments II, Ltd.* contained a different contractual clause from that contained in the other cases. The court below found that the lending agreement reached gross rents, as opposed to net rents in the other cases. Given the disposition of this case, however, a separate discussion of *Blossom II* will not be necessary.

2. Paragraph 26 of the Mortgage Agreement provides, in part:

As part of the consideration for the indebtedness evidenced by the Note, Borrower hereby absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ... it being intended ... that this assignment of rents constitutes an absolute assignment and not an assignment for an additional security only. Upon delivery of written notice by the Lender to Borrower of the breach of any covenant ... and without the necessity of Lender entering upon and taking and maintaining full control of the Project ... Lender shall immediately be entitled to possession of all rents and revenues.

All rents and revenues collected subsequent to delivery of written notice by Lender to Borrower of the breach by Borrower of any covenants ... in this instrument shall be applied first to the costs, if any, of taking control of ... the property and collecting the rents, including, but not limited to attorney's fees, ... costs of repairs to the property, premiums on insurance policies, taxes, assessments and other charges on the property.

Specifically, the court found that the statute was meant only to determine how a mortgagee could enforce its security interest in rents; it does not provide for an absolute transfer of ownership in these rents. *Id.* at 979; *see also Matter of Growers Properties,* 117 B.R. 1015, 1015 n. 1 (Bankr.M.D.Fla.1990); *In re One Fourth Street North, Ltd.,* 103 B.R. 320, 321–22 (Bankr.M.D.Fla.1989); *In re Aloma Square,* 85 B.R. 623, 625 (Bankr.M.D.Fla. 1988). As a result, the court was constrained to hold that since the statute would not allow for an absolute transfer of rents, the mortgagee's rights were possessory only, and not in the nature of complete ownership. As possessory rights, they were in the nature of a lien, and therefore became property of the debtor's estate pursuant to section 541[3] of the bankruptcy code. *Id.*

As property of the estate, the lender's right to the rents was thus limited by both the terms of the lending agreement and section 552(b)[4] of the bankruptcy code. Because section 552(b) carries forward the pre-petition security interest of the mortgagee, and because the court found that the parties intended the lending agreement to reach only net rents (that portion of rents remaining after payment of operating costs), the court found that the debtors' obligation of repayment was limited to these residual monies. *Id.* at 980–81. Therefore, the pivotal issue in this case was the court's decision to characterize the mortgagee's interest as possessory, for only then could it be considered a security interest and thus become part of the debtor's estate, subject to the jurisdiction of the bankruptcy court and the restrictions of section 552(b). Conversely, had the court found the mortgagee to have had an ownership right, the rents, to the extent provided in the Mortgage Agreement, apparently would have passed directly to Amerifirst and not been subject to the Chapter 11 Plan. The conclusion that the interest was a possessory one turned, of course, on the court's construction of the Florida statute.

On appeal, Amerifirst contends that the plain language of the statute compels the Court to find that upon default and notice the mortgagee, under Florida law, received an ownership right in the rents since the Florida statute purported to allow absolute assignments of rental proceeds. The Debtors dismiss the reading of the statute for which Amerifirst contends, arguing instead that the statute was meant to change only the procedure by which a mortgagee could enforce its right to collect rents pursuant to an assignment clause. The statute did not, they assert, confer any substantive right to ownership of the proceeds.

## I. STANDARD OF REVIEW

In a bankruptcy proceeding, the bankruptcy court is the finder of fact. *In re Caldwell,* 851 F.2d 852, 857 (6th Cir. 1988). Bankruptcy rule 8013 provides that "[f]indings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." *Id.* It is,

---

**3.** Section 541 provides, in pertinent part:

(a) The commencement of a case under … this title creates an estate. Such estate is comprised of all the following property, wherever located:

(1) all legal or equitable interests of the debtor in property as of the commencement of the case.

. . . . .

(6) Proceeds … and profits of or from property of the estate.

11 U.S.C. § 541 (1988). The court's conclusion that the rent proceeds became part of the estate was premised on its finding that the lender retained only a security interest in the proceeds. Thus the Debtor retained a legal interest in the proceeds as of the commencement of the case for the purposes of sections (a)(1) and (6).

**4.** Section 552(b) of the bankruptcy code, entitled Postpetition effect of security interest, provides in part:

[I]f the Debtor and an entity entered into a security agreement before the commencement of the case and if the security interest … extends to property of the debtor acquired before the commencement of the case and to proceeds … or profits of such property, then such security interest extends to such proceeds … or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable non-bankruptcy law, except to any extent that the court,

… based on the equities of the case, orders otherwise.

11 U.S.C. § 552(b) (1988).

therefore, the settled practice in this circuit that a district court is not to disturb the factual findings of a bankruptcy court unless there is "most cogent evidence of mistake or miscarriage of justice." *Sladov v. United States*, 552 F.2d 159, 162 (6th Cir. 1977) (quoting *McDowell v. John Deere Indus. Equip. Co.*, 461 F.2d 48, 50 (6th Cir.1972), *rev'd on other grounds*, 436 U.S. 238, 98 S.Ct. 1778, 56 L.Ed.2d 251 (1978)). Conclusions of law, on the other hand, are subject to *de novo* review. *In re Caldwell*, 851 F.2d at 857.

■ With respect to the substantive law to be applied, *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979), is controlling. In that case, the Supreme Court held that the right to rents and profits derived from mortgaged property is to be determined by reference to the laws of the state in which the property is located rather than by federal law.[5] Accordingly, the Court will apply Florida law to the dispute at hand.

## II. THE FLORIDA STATUTE

### A. Textual Analysis

■ The starting point for analysis of a statute is the statutory language itself. *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). "In this case it is also where the inquiry should end, for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). At issue in this case is the construction and effect of a Florida statute which provides:

> A mortgage may provide for an assignment of rents. If such assignment is made, *such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand*

made by the mortgagee. Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's right to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property. Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.

Fla.Stat. § 697.07 (1989) (emphasis added).

■ It is at once clear that section 697.07, on its face, authorizes inclusion of an assignment of rents provision in a lending agreement between a mortgagee and a mortgagor. Once the parties have agreed to such a provision, the assignment, whatever its terms, vests automatically in the mortgagee upon satisfaction of the statutory requisites of default and notice. The word "absolute," which is at the core of the present controversy, modifies the word "assignment," thus indicating that it is the rights conferred by the assignment itself that are transferred to the mortgagee under the statute. Nowhere, however, does the statute purport to define the scope of the substantive rights involved. Rather, the word "absolute" signifies that an assignment, whatever its terms, is to be effected free of any qualification or condition by which it might defeated or otherwise changed. Moreover, because the interest is absolute, it passes as an operation of law, conferring upon the mortgagee an ownership interest in the rents to the extent provided for in the agreement. Thus an assignment of rents provision may provide for an absolute transfer of the revenues generated by the subject property, creating an ownership interest in a mortgagee, which is effective upon default by the mortgagor and notice given to the mortgagor by the mortgagee.

---

**5.** The *Butner* court acknowledged, however, that it is well settled that "state laws to the extent that they conflict with the laws of congress ... on the subject of bankruptcies are suspended. While this is true, state laws are suspended only to the extent of actual conflict with the system

provided by the Bankruptcy Act of Congress." *Butner*, 440 U.S. at 54–55 n. 9, 99 S.Ct. at 917–18 n. 9 (citations omitted). This issue, although it may arise on remand, is not necessary to resolution of the question now before the Court.

The second sentence of the statute creates a procedural mechanism by which rent proceeds or profits may be preserved pending resolution of a dispute between a mortgagor and mortgagee as to their respective rights under either the lending agreement, section 697.02, or both. The reason for authorizing a forced deposit of the monies during the adjudicatory process is to preserve the collateral through expenditures for normal maintenance and operations. This sentence is meant to address situations, as here, in which there exists ambiguity in the agreement between the parties. In such a case, the mortgagor may protect his interests in the rents by placing them with the court pending resolution of the dispute. Otherwise, in the absence of any ambiguity, the rents automatically vest in the mortgagee. In addition, the statute also contemplates a situation in which the debtor refuses to comply with the demand to produce rents. In such a case, the mortgagee's rights may be protected by requiring the rents to be turned over to the court pending resolution of the dispute. Both readings of the second sentence harmonize both with the language of the statute and the realities to which the statute was meant to apply. The statute, then, is both substantive and procedural in nature: the first two sentences create an ownership right in rent proceeds, as well as the procedural requisites of default and notice necessary for the mortgagee to exercise his right to the proceeds. The final two sentences establish a procedure to sequester the rent proceeds pending resolution of any dispute which may exist between the parties.

## B. Legislative History

The legislative history of the statute strongly supports this conclusion. In the legislative analysis for House Bill 1153, which was enacted into law by the Florida Legislature as section 697.07, it was stated that Florida courts treated lenders inconsistently under the then-existing statutory scheme. Although savings associations were already statutorily authorized to require rent assignments as a facet of their security agreements, the Florida courts consistently refused to uphold such agreements. Final Staff Analysis, H.B.1153, at 108 (June 17, 1987). Instead, the courts allowed the debtor to remain in possession of the mortgaged property during the time it took the mortgagee to obtain a final foreclosure. Id. (citing Whitey v. Anthony Inv. Co., 119 Fla. 108, 160 So. 881 (1935)). Thus, although the statutory right to an assignment of rents existed, there was no judicial mechanism with which to enforce that right.

As a result of this policy, mortgagees were forced to seek enforcement of assignment provisions through a court-appointed receiver, a process which was both expensive and time consuming. The legislature recognized that "the overall costs of a receivership often exceed what can be justified from a commercial property which is only partially rented (most commercial mortgages in foreclosure are often not rented to capacity)." Id. at 109. Moreover, in contrast to other states in which foreclosures can be completed in only six to eight weeks, "Florida is a 'strict foreclosure' state [in which the foreclosure process] usually takes 18 to 24 months. During this period, the borrower is generally retaining the rents, and they are not being applied toward the mortgage obligation." Id. at 110. Consequently, it was feared that lenders were reluctant to pursue commercial loans as vigorously as they might were they to receive greater assurances of beneficial treatment in the Florida courts. See id. at 109.

Section 697.07 was intended to remedy this inconsistent and detrimental treatment of lenders by the Florida courts. The purpose was to assure that "commercial mortgage lenders [would] receive the right to require assignments of rents and the specific authority to enforce such assignments," while "[t]he mortgagor [would] lose the right to receive the rents which were assigned under the contractual terms and agreed to prior to the default." Id. (emphasis added). "The ... legislation would create a simple, equitable and inexpensive method by which assignment of rents contracts could be enforced by a

mortgage lender." *Id.* at 110 (emphasis added). In short, if an assignment clause is agreed to by the parties, the rights agreed to vest automatically in the mortgagee upon default and notice, and are enforceable in any Florida court without the necessity of first having obtained a judicial foreclosure.

This statute was meant not only to re-codify an existing, if unenforced right, but also to carve out a limited exception to the common law practice in the state. Section 697.02, entitled "Nature of a mortgage," memorializes well-settled law in Florida to the effect that a mortgage does not create an interest in land, but rather a chose in action creating a lien on land. *Waldock v. Iba,* 114 Fla. 786, 153 So. 915, 915–16 (1934); *see also Hemphill v. Nelson,* 95 Fla. 498, 116 So. 498 (1928). Under the statutory scheme as it once existed, a mortgagee had no right "of possession to property ... until due foreclosure [was] had according to the forms of law providing for the foreclosure of mortgages." *Folks v. Chesser,* 106 Fla. 836, 145 So. 602, 603 (1932). Thus a creditor holding a secured note could either ignore the security and bring an action on the indebtedness, or he could proceed to full judicial foreclosure. *See Jordan v. Sayre,* 29 Fla. 100, 10 So. 823 (1892). Beyond those choices, a lender was powerless to enforce his rights under a mortgage. In this context, the utility and logic of the new assignment provision can readily be seen: the legislature determined that lenders needed a speedy process to provide adequate assurance of protection from defaulting mortgage holders. That is precisely the problem section 697.07 was meant to address. Therefore, "[w]here an assignment of rents document is constructed and a loan goes into default, the lender can require rental payments to be paid *to the lender as opposed to the borrower.*" Final Staff Analysis, H.B. 1153, at 107 (emphasis added). Thus under section 697.07,

rents collected subsequent to default and notice may pass directly to the mortgagee.

## C. Precedent

At present there exist no opinions in the appellate branches of the Florida courts to guide this Court in its determination of the statutory issue at hand.[6] Accordingly, the Court must turn to the cases of other bankruptcy courts to determine the extent to which the foregoing conclusions are supportable.

Consonant with this Court's construction of the statute is *In re 163rd Street Mini Storage, Inc.,* 113 B.R. 87 (Bankr.S.D.Fla. 1990), in which the court found the statute to create an absolute transfer of ownership rights to the mortgagee upon compliance with the statutory requisites. *Id.* at 89. In reaching its conclusion, the court relied extensively upon the legislative history of the statute which indicated that despite the existence of a statutory authorization of rent assignments, the courts had been reluctant to enforce such agreements. Therefore, the court observed that the "legislature ... intended to provide a simple, equitable and inexpensive procedure for mortgagees to enforce provisions calling for the assignment of rents." *Id.* at 90. Thus mortgagees were intended to receive ownership rights in the rents. *Accord In re Sunrise Indus. Dev. Corp.,* 121 B.R. 911 (Bankr.S.D.Fla.1990).

The majority of reported cases, however, purport to contradict the holding in *Mini Storage.* The seminal case on this issue is *In re Aloma Square,* 85 B.R. 623 (Bankr.M.D.Fla.1988), in which the question was whether the statute could be applied retroactively, since the lending agreement there at issue had been entered into prior to the effective date of section 697.07. Concluding that the statute was procedural in nature, the court allowed retroactive ap-

---

**6.** Two Florida cases have dealt peripherally with the statute, but neither provide guidance for the issue now before the Court. The first is *Executive Square, Ltd. v. Delray Executive Square, Ltd.,* 546 So.2d 434 (Fla.Dist.Ct.App.1989), in which the court construed the statute to require deposit of rents into the registry of the court

pending adjudication of the parties' rights. The second is *Atco Constr. and Dev. Corp. v. Beneficial Sav. Bank,* 523 So.2d 747 (Fla.Dist.Ct.App. 1988), in which the court refused to apply the statute since it had not been enacted when the causes of action arose.

plication. *Id.* at 625. The court asserted that the statute "does not create any new rights regarding the ability to assign rents. Rather, it merely codifies existing case law except for those cases resolving the point at which the right to collect the rents becomes absolute." *Id.* In so holding, the court believed that prior case law to the effect that Florida was a "lien theory" state[7] was unaffected by the amendments to chapter 697 of the Florida statutes, of which section 697.07 was a part.[8]

The *Aloma* case suffers two flaws. First, nowhere did the court engage in analysis of the statutory text or legislative history. It chose instead to adopt its own conclusory result without explaining the reasoning supporting its decision. Second, and more important, the court's reasoning is inconsistent with its result. The court concluded that the statute created no substantive rights; that is, it did not allow for an ownership interest to be created through an assignment of rents mechanism. Yet the court went on to hold that because the creditor had complied with the statutory requisites before the bankruptcy petition was filed, it was not affected by the automatic stay, and was entitled to sequestration of the rents. *Id.* at 626. The problem with this result is that by prohibiting the debtor from using the cash collateral, based upon its finding that the creditor was unaffected by the automatic stay, the court necessarily implied that the rents derived from the property were not part of the debtor's estate. However, under Florida mortgage law, which the court stated was unaffected by virtue of the procedural nature of section 697.07, the mortgagee could have obtained no more than a lien on the cash collateral. Yet a lien interest would have been part of the debtor's estate. For practical purposes, then, the court allowed the creditor to obtain an ownership interest in the rents (a result consistent with a substantive interpretation of the statute), but not the lien interest which would be dictated by application of the procedural interpretation the court claimed to embrace. Thus despite the court's description of section 697.07 as procedural, it imbued it with substantive content. Consequently, the precedential value of this case is limited both by the lack of analysis and by the inconsistency between the court's holding and its actions.

The decision in *In re Aloma* was also criticized by the court in *In re Camelot Assocs. Ltd. Partnership*, 102 B.R. 161, 167 (Bankr.D.Minn.1989), which found that the *Aloma* court had mischaracterized the nature of section 697.07. Finding that the statute "operates to change the substantive property rights of the parties to an assignment of rents ... [and] is not merely a clarification of prior statutory or common law," *id.* at 166, the court rejected *Aloma* and declined to apply the statute retroactively. Instead, the court held that the statute changed substantive property rights in Florida, making all rent assignments into absolute transfers of the ongoing income stream.

The court in *In re One Fourth Street North, Ltd.*, 103 B.R. 320 (Bankr.M.D.Fla. 1989), acknowledged that "[t]here is hardly any doubt that the literal reading of the statute indicates that under the conditions set forth, the assignment of the rent ... will become the property of the mortgagor

---

7. Under the lien theory, a mortgage creates only a lien against the land securing the note, with the right of ownership and possession remaining with the debtor. *See Four Star Aviation Co. v. United States*, 409 F.2d 292 (5th Cir.1969); *Snow v. Nowlin*, 125 Fla. 166, 169 So. 598, 599 (1936). Application of this theory dictates that the lender can succeed to rights in the property, including rents, only after a judicial foreclosure and sale. *See White v. Anthony Inv. Co.*, 160 So. 881 (1935).

8. The reluctance of the court to overrule Florida common law has been shared by others. Per-

haps the most detailed discussion of the interplay between common law mortgage theory in Florida and the effect of a "literal" reading of section 697.07 is found in *Matter of Growers Properties No. 56 Ltd.*, 117 B.R. 1015, 1015 & n. 1 (Bankr.M.D.Fla.1990). The court felt that a literal reading of the statute, for which the lender here contends, "runs afoul of both mortgage law and bankruptcy policy," and thus chose to construe the statute as procedural in nature in an effort to preserve Florida mortgage lien policy. *Id.*

[sic]."[9] *Id.* at 321. Nevertheless the court went on to conclude that section 697.07 "was not intended to constitute a complete derogation of" well settled Florida law, and that the lender could not obtain ownership rights to the rents absent a judicial foreclosure. *Id.* As in the *Aloma* case, the court concluded that the statute was procedural in nature, conferring no substantive rights upon mortgagees. *Id.*

This case suffers from some of the same defects found in the *Aloma* case. Like *Aloma,* the court gave no reasons for the construction it gave the statute. Moreover, it relied exclusively upon *Aloma* for the proposition that the statute, "rather than adding to a mortgagee's substantive rights, ... simply provides a less cumbersome mechanism to perfect the right to rents obtained from the mortgaged property." *Id.* at 321. Because *Aloma* provides little precedential value to sustain the court's holding, and because the *One Fourth Street* court provided no independent analysis upon which this court can rely, *One Fourth Street* does not refute this Court's conclusion that section 697.07 creates an ownership interest in the mortgagee.

Finally, the court in *Matter of Growers Properties No. 56 Ltd.,* 117 B.R. 1015 (Bankr.M.D.Fla.1990), rejected reading section 697.07 as a substantive provision. The court, without analysis, said

> [a]ny reading of the statute to create an absolute transfer of all interest in rents not only goes against the mortgage lien theory, but eliminates any reorganization by a Chapter 11 debtor. It is this Court's position that such an interpretation runs afoul of both mortgage law and bankruptcy policy.

*Id.* at 1015–16 n. 1. Irrespective of the merits of the court's view, federal courts are obliged to give effect to the clear and unambiguous pronouncements of state legislatures. "Once the meaning of an enactment is discerned ... the judicial process comes to an end." *Tennessee Valley*

*Auth. v. Hill,* 437 U.S. 153, 194, 98 S.Ct. 2279, 2302, 57 L.Ed.2d 117 (1978). The court, therefore, was without authority to substitute its judgment for that of the Florida legislature. Because the statute is clear on its face, and because that meaning is supported by the legislative history of the statute, the *Growers Properties* case is not persuasive authority for the mortgagor in the instant action.

### III.  ANALYSIS

■ The Court finds that the language of the statute, its legislative history, and the weight of reasoned case authority compel the conclusion that section 697.07 creates an ownership right in property rents in a mortgagee. Although it is clear that the statute is a departure from traditional mortgage law in Florida, the Court is convinced that the Florida legislature meant to carve out an exception to past practice, as well as to re-codify a right which had existed previously in the Florida code, but which had become effectively unenforceable. Since mortgage law is a creature of statute, there is no reason why the very body bearing the mantle of decision making responsibility should not be able to undo that which it has done. Indeed, this is the *raison d'etre* for legislative authority.

In opposition to the literal reading the Court adopts here, the mortgagor argues that the use of the word "absolute" is a legislative malapropism, and that the court's decision in *In re 163rd Street Mini Storage* "simply accepts uncritically the court-created fiction that the term 'absolute assignment' is intended by the user to mean full and exclusive ownership." Brief of Appellees at 27 n. 10. The appellees are correct in their assertion that the term "absolute" has been endowed with judicial meaning beyond its common usage—that is precisely the reason compelling the statutory construction adopted here.

Although courts are obliged to use language in its commonly understood sense, "[t]he sense of a word that is commonly

---

9. The Court assumes from the tenor of the discussion and the first sentence of the paragraph immediately following in the *Fourth Street* opin- ion, that the court meant to say "mortgag*ee*" and not "mortgag*or*" in the passage just quoted.

used as a term of art in a particular discipline is the relevant sense for purposes of statutory construction, where the statute being construed deals with that discipline." *United States v. Cuomo*, 525 F.2d 1285, 1291 (5th Cir.1976) (citations omitted). The term "absolute" has long been used to define interests that encompass the full panoply of rights associated with ownership. For example, with respect to mortgages, Florida courts have always distinguished between deeds that were absolute, and those which conveyed a mere pledge or security interest. For example, in *Chopan v. Klinkman*, 330 So.2d 154 (Fla.Dist.Ct. App.1976), finding an installment sale to be a contract to sell and not a sale itself, the court refused to allow a mortgagee to accelerate his mortgage and foreclose on the note. In distinguishing between a sale and a contract to sell, the court said that

> [a] contract whereby property is transferred from one person to another for ... value, impli[es] the passing of the general and absolute title, *as distinguished from a special interest, falling short of complete ownership.*

*Id.* at 155 (citations omitted) (emphasis by court). Although the court was dealing with the sale of a mortgage, its understanding of the distinction between an absolute interest and other interests is instructive: the properties imputed to an absolute title are in the nature of complete ownership.[10] Similarly, the court in *Sto*

*vall v. Stokes*, 94 Fla. 717, 115 So. 828 (1927), held that

> [a]n absolute conveyance of property is in equity a mortgage if when it was made it was intended by the parties to be a security for money. If when an absolute conveyance of property is made it is in legal effect a mortgage it remains a mortgage.

*Id.* 115 So. at 836 (citations omitted). In other words, a mortgage, which in Florida creates only a lien interest, is to be distinguished from an absolute conveyance, which creates an ownership interest.[11]

Cases unrelated to mortgage law have also utilized the word "absolute" in the manner adopted here. For example, the court in *Harden v. Thomas*, 329 So.2d 389 (Fla.Dist.Ct.App.1976), said that "[c]onditions which might justify relieving a parent temporarily of the custody of his child would not necessarily support absolute and permanent transfer of the child to a stranger or near kin." *Id.* at 391. Likewise, in *Boykin v. Town of River Junction*, 124 Fla. 827, 169 So. 492 (1936), the Florida Supreme Court validated the constitutionality of municipal bonds which authorized the holder to "represent himself as the absolute owner thereof, and ... granted power to transfer absolute title." *Id.* 169 So. at 494.

The foregoing cases illustrate that the word "absolute" conveys ownership of the complete bundle of rights inhering in a given object, and as such is a term of art, the definition of which is critical to

---

**10.** The court also quoted Florida Jurisprudence to underscore this point: a sale is a

> transmutation of property from one person to another ... *whereby the absolute or general ownership of property is transferred.*

*Chopan v. Klinkman*, 330 So.2d at 155 (28 Fla. Jur.; Sales, § 4) (emphasis by court). The court also noted that

> [a] sale is the transfer of the general or absolute, as distinguished from a special, property in a thing. A sale is said to be *an entire and absolute transfer of the thing sold,* without reservation.

*Id.* (citation omitted) (emphasis by court).

**11.** Other cases support this construction of the word "absolute." "The issue in this case is

whether or not there had been an absolute conveyance of land ..., or a loan transaction ... in the guise of a conditional sale," *Brown v. Oehler*, 111 Fla. 564, 149 So. 521, 521 (1933); the distinguishing characteristic between a sale and a consignment is the absolute nature of a sale, as opposed to the conditional nature of a consignment, *Edwards v. Baldwin Piano Co.*, 79 Fla. 143, 83 So. 915, 917 (1920); "a deed absolute on its face may by parol evidence be shown to be a mortgage," *Connor v. Connor*, 59 Fla. 467, 52 So. 727, 729 (1910); an absolute deed of conveyance is one conferring ownership, *First Nat'l Bank v. Ashmead*, 23 Fla. 379, 2 So. 657, 661 (1887).

an informed understanding of its meaning in section 697.07 of the Florida code. It is axiomatic that where a statute is unambiguous, it should be given effect according to its literal language. *Hall v. Secretary Health, Educ. and Welfare,* 600 F.2d 556, 662 (6th Cir.1979). It is also settled that when a legislature drafts a statute, it is presumed that it does so with full knowledge of the existing law, with great care for the precise language which must be used to achieve the desired result. *Fed. Elec. Corp. v. Dunlop,* 419 F.Supp. 221 (M.D.Fla.1976); *Ford v. Wainwright,* 451 So.2d 471, 475 (Fla.1984). Given the clear meaning of the word "absolute," and the Florida Legislature's presumed knowledge of that meaning, the mortgagor's argument that its use in section 697.07 was a mere malapropism is untenable.

Having established that the statute allows for an absolute interest in rents upon default and notice, the Debtor's remaining arguments that assignment of rents clauses generally do not transfer absolute interests since the features of such agreements are inconsistent with absolute ownership are without merit. Therefore, the Court holds that the Florida statute allows for the conferral of an ownership interest in the rents generated from the property in question upon default by the mortgagor and notice given by the mortgagee.

Given the Court's disposition of the Florida statute, and the fact that the decision below to deny an ownership interest to the mortgagee turned upon a contrary construction of the statute, it is appropriate that this case be remanded for determination of the effect, if any, this construction has on its earlier decision that the rent proceeds became part of the debtor's estate. In remanding the case, this Court expresses no opinion on the operation or effect of the statute, nor on any question of federal preemption that may be raised pursuant to the authorities cited in *Butner v. United States.*

WHEREUPON, upon consideration and being duly advised, the Court REMANDS this action to the bankruptcy court for re-

consideration of its opinion in light of the adopted construction of the Florida statute.

IT IS SO ORDERED.