**In re J.E. CARTER, Jr. and A.S. Carter, Debtors.**

**In re J.E. COWART and E.L. Cowart, Debtors.**

**Bankruptcy Nos. 91–0564–BKC–3P1, 91–0565–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

May 2, 1991.

Lance P. Cohen, Jacksonville, Fla., for debtors.

Michael G. Tanner, Jacksonville, Fla., for C & S Bank.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court on The Citizens and Southern Bank of Duval County's ("C & S") Motion to Prohibit Use of Cash Collateral and the respective Debtors' Motions for Use of Cash Collateral.[1] A hearing of the motions was held on April 4, 1991, and upon the evidence presented the Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

On February 21, 1984, the four Debtors, as individuals, entered into an agreement to lease a Jacksonville, Florida, building ("HRS building") from ASC of Jacksonville, Inc. The lease was subsequently assigned by the Debtors to themselves as general partners.

On October 3, 1984, the Debtors subleased the building to the State of Florida, Department of General Services.

On December 7, 1984, Carter–Cowart Development Corporation, a Florida corporation controlled by the Debtors, delivered to Citizens Federal Savings and Loan Association of Jacksonville a Mortgage Note secured by a mortgage on property owned by the corporation, including its leasehold interest in the HRS building.

As further security the corporation delivered to Citizens Federal a Collateral Assignment of Lease or Leases, assigning its interests, including the rights to "... rents,

income and profits," in both the ASC lease and the sub-lease to Citizens Federal.

On August 17, 1988, the Debtors delivered to Ocean State Bank a Promissory Note secured by a mortgage granting Ocean State a mortgage lien on certain property, including their leasehold interest in the HRS building and the rents flowing from the sub-lease.

Subsequently Citizens Federal assigned its mortgage and its Collateral Assignment of Lease or Leases to Ocean State Bank. Ocean State and the Debtors then entered into an Amended and Restated Mortgage Modification, Consolidated and Spreading Agreement which consolidated the debts and liens of the first two transactions.

C & S is the successor in interest to Ocean State and is the present owner and holder of all of the loan and security instruments executed by the Debtors in favor of Citizens Federal and Ocean State.

Debtors defaulted under each of the Notes by failing to pay them in full on the maturity dates. In June, 1990, by separate letters and pursuant to section 697.07, Florida Statutes, and the terms of the Mortgages, C & S demanded that all rents received by the Debtors from the properties subject to the mortgages, including the sub-lease, be turned over to C & S.

The Debtors did not comply and filed their petitions for relief under Chapter 11 on February 6, 1991.

The paramount issue that the Court must address is whether or not under 11 U.S.C. § 363(a) and Florida Statutes § 697.07 the rent proceeds from the sub-lease are cash collateral.

### Conclusions of Law

Cash collateral is defined in 11 U.S.C. § 363(a) which provides:

(a) In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, prod-

---

1. By agreement of the parties, the two cases are decided together.

ucts, offspring, *rents,* or profits *of properties subject to a security interest* as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title. (emphasis added).

Although rents are specifically included within the definition of cash collateral, the rents must be "of property subject to a security interest" pursuant to § 552(b) which provides:

(b) Except as provided in Sections 363, 506(c), 522, 544, 545, 547, and 548 of this title, if the debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such proceeds, property, *then such security interest extends to such* proceeds, product, offspring, *rents,* or profits acquired by the estate after the commencement of the case *to the extent provided by such security agreement and by applicable nonbankruptcy law,* except to any extent that the court, after notice and a hearing and based on the equities of the case, orders otherwise. (emphasis added).

Thus, the Court must look to state law and to the terms of the underlying security agreement to determine whether an entity's interest in rents received by a debtor continues post-petition.

■ Under Florida law a leasehold interest in realty may be the subject of a mortgage or security interest. *See, e.g., Gould, Inc. v. Hydro–Ski International Corporation,* 287 So.2d 115, 116 (Fla. 4th DCA 1973); *Oliver v. Mercaldi,* 103 So.2d 665, 667 (Fla. 2d DCA 1958). Accordingly, the Debtors could properly grant C & S, or its predecessors, a valid and enforceable mortgage lien in their leasehold interest in the HRS building.

■ The Mortgages, Collateral Assignment of Lease or Leases, and the Consolidation Agreement were all valid security agreements entered into by the Debtors and C & S's predecessors in interest prior to the commencement of this case, creating a pre-petition security interest in both the HRS building and the rents from the sub-lease. Such security interest continues post-petition and secures the full amount of the consolidated debt.

Section 697.07, Florida Statutes, provides in pertinent part:

A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee.

C & S has satisfied the requirements of § 697.07 by making a pre-petition written demand on the Debtors to deliver all rental proceeds received under the HRS sub-lease to C & S.

■ Under 697.07 C & S's written demand following the default effected an absolute transfer of the ownership of the rents from the Debtors to C & S prior to the date of the petition. *In re Thymewood Apartments, Ltd.,* 123 B.R. 969, 977–79 (Bankr. S.D. Ohio 1991); *In re 163rd Street Mini Storage, Inc.,* 113 B.R. 87, 89 (Bankr. S.D.Fla.1990); *Executive Square, Ltd. v. Delray Executive Square, Ltd.,* 546 So.2d 434, 434 (Fla. 4th DCA 1989). *See also, In re Aloma Square, Inc.,* 85 B.R. 623, 625–26 (Bankr.M.D.Fla.1988), *aff'd,* 116 B.R. 827 (M.D.Fla.1990).

Accordingly, the Debtors have no interest in the rental proceeds from the HRS sub-lease and these proceeds are neither property of the estate nor cash collateral.

In view of this ruling, the Court finds it unnecessary to discuss any other issues.

C & S may proceed with all remedies available to it under applicable non-bankruptcy law with respect to such rents. A separate Order will be entered in accordance with these Findings of Fact and Conclusions of Law.