### In re SHOPPES OF HILLSBORO, LTD., Debtor.

**Bankruptcy No. 91–30259–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Sept. 26, 1991.

Howard Berlin, Miami, Fla., Howard D. DuBosar, Kluger, Kaplou, Peretz & Berlin, P.A., Boca Raton, Fla., for debtor.

Lynn Harris, Haley, Sinagra & Perez, P.A., Miami, Fla., for Meritor Savings Bank.

### MEMORANDUM OPINION

ROBERT A. MARK, Bankruptcy Judge.

This is a Chapter 11 case in which I must determine whether rents generated from the Debtor's shopping center are property of the estate. The answer depends upon whether the mortgagee's pre-petition demand for turnover conveyed ownership of the rents to the mortgagee under § 697.07 of the Florida Statutes. The issue is framed by Meritor Savings Bank's Amended Motion to Sequester Rents and Profits and for Turnover of Same ("Motion for Turnover"), filed on February 25, 1991.

I heard oral argument on February 28, 1991. After considering the thorough and helpful memoranda submitted by the parties, reading the cited decisions and reviewing further the applicable statute and legislative history, I announced my ruling denying Meritor's motion at a hearing on May 30, 1991. This memorandum opinion incorporates and supplements the findings and conclusions announced that day.[1]

Meritor contends that the rents are not property of the estate because it claims to have obtained an absolute assignment of the rents under Florida law prior to the filing of this Chapter 11. I disagree and conclude that where pre-bankruptcy implementation of Florida's assignment of rents statute results in the deposit of rents into the state court registry and there has been no state court adjudication of the mortgag-

---

1. Prior to release of this opinion, the debtor consented to dismissal of this bankruptcy case. Nevertheless, I chose to release this opinion because of the split of authority on this important issue.

ee's rights, the rents remain property of the estate.

## BACKGROUND

The relevant facts are not in dispute. Shoppes of Hillsboro, Ltd. (the "Debtor" or "Shoppes") is the owner of the 57,965 foot shopping center known as the Shoppes of Hillsboro ("the shopping center"). In November 1988, Shoppes refinanced the center and executed a promissory note. The note was later assigned to Meritor together with various related security documents, including a mortgage and an assignment of leases, rents and profits. The mortgage and assignment secured Shoppes' obligations as maker of the promissory note. Meritor contends that under the promissory note and mortgage, the principal sum of $4,518,745.16 was owed as of the filing date.

On or about August 23, 1990, Meritor asserted, by letter, that Shoppes was in default of its obligations under the note. Pursuant to Fla.Stat. § 697.07, Meritor demanded that all rents thereafter received by Shoppes or rental proceeds currently held in Shoppes' possession be paid over to Meritor. Shoppes refused to voluntarily turn over the rents.

Based upon the alleged default in the underlying note and mortgage, Meritor initiated a foreclosure proceeding in the Circuit Court of Broward County, Florida. ("the state court action"). Meritor filed an emergency motion in the state court action to enforce the assignment of rents and to compel Shoppes to pay the rents collected into the registry of the state court. On October 5, 1990, the state court entered an order granting Meritor's motion. An amended order was entered on November 13, 1990.

The record before me does not include the amount of rents actually paid into the registry of the state court. Prior to filing its Chapter 11 petition on January 31, 1991, the Debtor provided an accounting to Meritor for the January, 1991 rents reflecting total collections of $34,454.88. These rents were neither turned over to Meritor nor paid into the state court registry.

The foregoing findings are not intended to be binding in the event of future litigation in the state court or this court with respect to the amount, validity or priority of Meritor's claim nor its right to foreclose upon its mortgage on the shopping center. Rather, my decision relies upon the following undisputed facts:

1. Meritor exercised its rights under Fla.Stat. § 697.07 and demanded turnover of the rents prior to the bankruptcy;

2. The state court ordered Shoppes to deposit the rents into the state court registry; and

3. Prior to the filing of the bankruptcy, the state court had *not* adjudicated Meritor's rights to the rents.

These key facts frame the issue—Were the rents property of the estate when the Chapter 11 began?

## DISCUSSION

The controversy stems from the use of the word "absolute" in § 697.07, the assignment of rents statute adopted by the Florida legislature in 1987. By using this word, did the legislature intend to foreclose a borrower's rights to the rents for all time, for all purposes and without further adjudication once written demand was served by the mortgagee? My analysis begins with the statute and its legislative history.

Fla.Stat. § 697.07, provides that:

A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee.

Upon application by the mortgagee, a court of competent jurisdiction may require the mortgagor to deposit such rents in the registry of the court pending adjudication of the mortgagee's rights to the rents, any payments therefrom to be made solely to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property.

Any undisbursed portion of said rents shall be disbursed in accordance with the court's final judgment or decree.

Meritor pursued its rights under the statute before the bankruptcy began. It served a written notice of default and a written demand for the rents. Upon Shoppes' refusal to turn over the rents, Meritor filed suit and obtained a state court order requiring the deposit of the rents into the registry of that court.

The Florida assignment of rents statute was designed to address a difficult problem that existed for mortgagees prior to its adoption in 1987. Under prior law, a mortgagee needed an order sequestering the rents or otherwise was required to take possession of the rents by consent or through the appointment of a receiver. That had to be accomplished before an assignment of rents could result in the mortgagee taking control of the rents out of the hands of the borrower. *In re Executive Square, Ltd.*, 77 B.R. 303 (Bankr.S.D.Fla. 1987), citing and quoting from the Florida Supreme Court's decision in *White v. Anthony Inv. Co.*, 119 Fla. 108, 160 So. 881 (1935).

The legislative history of Fla.Stat. § 697.07, cited by the parties here and discussed in various reported cases interpreting the statute, is contained in the Final Staff Analysis for House Bill 1153, dated June 17, 1987 (the "Staff Analysis"). The Staff Analysis discussed the then existing absence of an effective judicial mechanism to enforce an assignment of rents given, among other things, the cost and difficulty of obtaining a receiver and the fact that completing a foreclosure in Florida can often be a long and expensive process. The resulting problem was explained further:

> Florida courts have consistently ruled that the mortgagor is entitled to continue to receive the rents from such property until final disposition through a completed foreclosure. The refusal of courts to permit enforcement of assignment of rents has resulted in mortgage lenders becoming reluctant to seek enforcement of instruments containing such clauses.

To address these concerns, the Florida legislature enacted the new rents statute at issue. The new statute obviously changed the existing law. The question is, did it intend a change so dramatic that rents would no longer be the property of a debtor mortgagor upon the filing of a bankruptcy petition?

At least two bankruptcy judges and one district court judge have answered yes, concluding that ownership of the rents is transferred by implementation of the statute. *In re Thymewood Apartments, Ltd.*, 123 B.R. 969 (S.D.Ohio 1991); *In re Carter*, 126 B.R. 811 (Bankr.M.D.Fla.1991) (Judge Proctor); *In re 163rd Street Mini Storage, Inc.*, 113 B.R. 87 (Bankr.S.D.Fla.1990) (Judge Weaver).

In reaching this result in his *163rd Street* decision, Judge Weaver relied heavily on the legislative history contained in the Staff Analysis. Based upon the history, the court concluded that the new law "would remedy the enforcement problem by enabling and authorizing the mortgagee to enforce its assignment of rents clause without the need for the foreclosure proceeding." 113 B.R. at 89.

Consistent with this view, the court held that § 697.07 creates an absolute transfer of the income stream upon default and written demand such that the rents are not property of the estate upon a subsequent bankruptcy filing. 113 B.R. at 90. Judge Weaver has remained faithful to this view. *See In re Sunrise Industrial Development Corp.*, 121 B.R. 911 (Bankr.S.D.Fla. 1990). The absolute ownership view has also been adopted by Bankruptcy Judge Proctor in the Middle District of Florida. *See In re Carter*, 126 B.R. at 811. *See also In re Aloma Square, Inc.*, 85 B.R. 623 (Bankr.M.D.Fla.1988), *aff'd*, 116 B.R. 827 (M.D.Fla.1990).

The *163rd Street* decision was cited and followed in a lengthy appellate opinion written by United States District Judge Kinneary in *In re Thymewood Apartments, Ltd.*, *supra*, 123 B.R. at 969. In the decision on appeal, the bankruptcy court concluded that § 697.07 was not meant to provide for an absolute transfer

of ownership rights in rents upon default by a debtor. *In re Cardinal Industries, Inc.*, 118 B.R. 971 (Bankr.S.D.Ohio 1990). The district court disagreed and reversed holding that the statute does create a transfer of ownership of the rents upon default and demand.

The *Thymewood* court analyzed the language of the statute, the legislative history and case authority and concluded that § 697.07 creates an ownership right in rents for a mortgagee. Judge Kinneary recognized that this result is a departure from traditional mortgage law in Florida. Nevertheless, he could not accept the argument that use of the word "absolute" could mean anything other than full ownership:

> [G]iven the clear meaning of the word 'absolute' and the Florida Legislature's presumed knowledge of that meaning, the mortgagor's argument that its use in section 697.07 was a mere malapropism is untenable.

123 B.R. at 979. The *Thymewood* court read the statute literally and as such, could only conclude that ownership was "absolutely" transferred.

I agree with the several courts which have reached the opposite conclusion. In *In re One Fourth Street North, Ltd.*, 103 B.R. 320 (Bankr.M.D.Fla.1989), Judge Paskay held that the rents remained property of the estate and that the statute does not grant the mortgagee an absolute right of ownership:

> Notwithstanding the liberal language of the statute, this Court is satisfied that § 697.07 was not intended to constitute a complete derogation of the law that had been well settled in this state. In other words, it was not meant to create an outright or absolute transfer of ownership interest in rents where none existed before.

103 B.R. at 321.

Judge Paskay found his conclusion to be consistent with the language in the statute that contemplates adjudication of the mortgagee's rights to the rents if the rents are placed into the state court registry. "This section obviously contemplates further judicial proceedings and requires a determination of the mortgagee's rights to the rents." *Id.* Judge Paskay concluded that the statute does not convert a security interest in the rents to absolute ownership.

Bankruptcy Judge Baynes discussed the issue in a lengthy footnote in *Matter of Growers Properties No. 56, Ltd.*, 117 B.R. 1015 (Bankr.M.D.Fla.1990). Judge Baynes noted, historically and as a matter of present law, that mortgage law in Florida is based upon a lien theory with transfer of ownership occurring only upon foreclosure. In discussing transfer of ownership of rents under the statute, the Court stated:

> [t]o read the statute regarding assignment of rents as [the mortgagee] would wish would create a forfeiture within the lien context without a judicial foreclosure which is required by Florida law.

117 B.R. at 1016, fn. 1. In his view it would be inconsistent for Florida law to require a mortgagee to foreclose on real property to obtain title, while allowing the mortgagee to obtain ownership of the rents that are pledged as additional security without requiring a foreclosure.

Judge Baynes found that the language in the statute is consistent with the right to collect, not the right to ownership of the rents. He concluded:

> Any reading of the statute to create an absolute transfer of all interest in rents not only goes against the mortgage lien theory, but eliminates any reorganization by a Chapter 11 debtor. It is this Court's position such an interpretation runs afoul of both mortgage law and bankruptcy policy. To adopt the position of cases such as *In Re 163rd Street Mini Storage, Inc.*, would allow a mortgagee under state law to utilize rents without the necessity of foreclosing its mortgage lien. [citation omitted] The better view is in the *In re One Fourth Street North, Ltd.* Such is consistent with Florida mortgage lien policy.[2]

In addition to the body of federal decisions discussed earlier which attempt to

---

2. I agree with Judge Baynes' analysis of Florida mortgage law. Nevertheless, the fact that the statute may be inconsistent with Florida mort-

gage lien policy does not end the analysis. "Since mortgage law is a creature of statute, there is no reason why the very body bearing

interpret the statute at issue, we now have the benefit of a state appellate court's interpretation. *Nassau Square Associates, Ltd., et al. v. Insurance Commissioner of the State of California*, 579 So.2d 259 (Fla. 4th DCA 1991). This decision is significant since the rights to rents and profits derived from mortgaged property is to be determined by the laws of the state in which the property is located, rather than by federal law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). In *Nassau Square*, the district court of appeals was reviewing a trial court's ruling that the statute should be applied retroactively. In a *per curiam* opinion, the court affirmed finding that retroactive application is proper since the statute is remedial in nature.

In this case, Meritor argued both in its written memoranda and in oral argument, that Fla.Stat. § 697.07 created new substantive rights for mortgagees. *See* Meritor Savings Bank's Reply Memorandum of Law, at 4 (Feb. 28, 1991). The *Nassau Square* court disagreed, affirming the trial court's determination that the statute was remedial in nature. The Florida appellate court agreed with Judge Paskay's analysis of the statute and focused on the language referring to further adjudication by the state court *after* the rents are deposited into the court registry:

> [W]e also agree that the plain language of the statute, when it refers to 'pending adjudication of the mortgagee's rights to the rents,' indicates that further judicial proceedings are contemplated, which language would be surplusage if the statute gave the mortgagee an absolute right to the rent. An absolute transfer would not suppose a deposit into the registry of the court.

579 So.2d at 261.[3]

This analysis is compelling. Funds deposited into a court registry, like funds deposited in an escrow account, are subject to competing claims and interests. If these competing claims have not been adjudicated, the mortgagee's ownership of the rents cannot be absolute. Absolute ownership would mean the mortgagee's rights were irrevocable. This cannot be so if further adjudication is expressly contemplated.

Treating the rents as property of the estate is not inconsistent with the legislative goal reflected in the Staff Analysis. Under the statute, upon default and demand, the borrower promptly loses the right to collect the rents without undue expense or difficulty to the mortgagee. Either the borrower will agree to the demand and the rents will begin to flow directly to the mortgagee, or more commonly, the borrower will object and the rents will be deposited into the registry of the court. Either way, the statute allows the mortgagee to expeditiously protect its security interest in the rents upon default by terminating the borrower's right to collect those rents. Finding that the rents become absolutely owned by the mortgagee is not necessary to effectively implement this streamlined procedure.

The legislative history relied upon by the courts in *In re 163rd Street* and *In re Thymewood*, does not mandate an interpretation that ownership is transferred. The Staff Analysis included the following discussion:

> [Upon default] [t]he mortgagor will *lose* the right to receive the rents which were assigned under the contractual terms and agreed to prior to the default.

> The proposed legislation would create a simple, equitable and inexpensive method by which assignment of rents contracts could be *enforced* by a mortgage lender.

---

the mantle of decision making responsibility should not be able to undo that which it has done." *In re Thymewood, supra*, 123 B.R. at 977. Thus, subject to Constitutional challenges, the legislature could create rights in rents different from and perhaps inconsistent with rights in real property.

3. Just prior to the release of this opinion, Bankruptcy Judge Killian of the Northern District of Florida issued an opinion also finding that the statute does not convey absolute ownership. *In re Mariner Enterprises of Panama City, Inc.*, 5 Fla.L.Weekly Fed., B254 (Sept. 13, 1991).

Final Staff Analysis, HB 1153 (Fla.), pp. 109–110, (June 17, 1987) (emphasis supplied).

This portion of the legislative history includes two important elements. First, the mortgagor *loses* the right to collect the rents and, second, the new statute provides an inexpensive *enforcement* mechanism either by consent or the forced deposit of the rents into the court registry. See Staff Analysis HB 1153 at 109. Neither of these key elements of the statute is inconsistent with my conclusion that further adjudication is required to transfer ownership.

The opposite result would be illogical, particularly applied to the facts in this case. Before filing its Chapter 11 petition, Shoppes was able to utilize the rents, with permission of the state court, "to protect the mortgaged property and meet the mortgagor's lawful obligations in connection with the property." Fla.Stat. § 697.07. Thus, under the statute, Shoppes was able to use the rents to operate the property even *after* demand was made by the mortgagee. Prior to the filing, the state court had not adjudicated Meritor's rights to the rents.

To interpret the statute as Meritor requests and find that the rents are not property of the estate, would give the Debtor less rights after filing for bankruptcy protection than it had in the state court prior to filing. Indeed, unless Meritor in its sole discretion, chose to release rents for operations, the Debtor would be unable to function and the reorganization would be dead on arrival.

By contrast, the Court's holding here maintains a balance of rights and protections consistent with both the stated goals of the Florida statute which we must respect and the goals of Chapter 11. As property of the estate, the rents may be utilized by the Debtor. However, as a debtor-in-possession, the Debtor must deposit the rents into a bank account under the jurisdiction of the Court. Moreover and more significantly, since Meritor has a perfected security interest in the rents, the monies are cash collateral. As such, the Debtor can only use the rents by consent or with court approval. This approval is given only if Meritor's rights are adequately protected.

## SCOPE OF DECISION

In finding that the rents here are property of the estate, I do not hold that the statute could never convey absolute ownership. For example, the result might be different in a case in which the borrower responded to a pre-petition demand under § 697.07 by voluntarily paying the rents to the mortgagee rather than into the state court registry. This may not occur often, but to the extent that it does, further adjudication is arguably unnecessary in order to transfer absolute ownership to the mortgagee.

Other issues remain including interpretation of the statutory phrase "pending adjudication of the mortgagee's right to the rent" which modifies the prior phrase providing for deposit of the rents into the court registry. Does it mean pending a final judgment of foreclosure with title to the rents passing to the mortgagee only after a final judgment? Alternatively, it could contemplate a preliminary adjudication by the state court which would simply determine whether the mortgagee had a valid assignment, whether the note was in default and whether the mortgagee had made proper written demand under the statute.

I do not decide that issue because there was no preliminary or final adjudication in the state action prior to the Chapter 11 filing in this case.

## CONCLUSION

In cases where pre-bankruptcy implementation of § 697.07 results in the deposit of rents into the state court registry and there has been no preliminary or final adjudication of the mortgagee's rights by the state court, the rents in the state court registry and the future stream of rents are property of the estate upon filing of a Chapter 11.

Since I find that the rents here are property of the estate, Meritor's motion is denied without prejudice to enforcement of the protections to which it is entitled under § 363 of the Bankruptcy Code. The Court will enter a separate Order consistent with this opinion denying Meritor's Motion for Turnover.