**In re VENICE–OXFORD ASSOCIATES LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 97–9831–8G1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

April 17, 1998.

Russell M. Blain, Wanda H. Anthony, Stichter, Riedel, Blain & Prosser, P.A., Tampa, FL, for Venice–Oxford Associates Limited Partnership.

Paul Bennett Bran, Guy S. Neal, Dickstein, Shapiro, Morin & Oshinsky, L.L.P., Washington, D.C., for Venice–Oxford Associates Limited Partnership.

Gregg W. McClosky, Michael J. Ioannou, Mattlin & McClosky, Boca Raton, FL, for Multifamily Mortgage Trust 1996–1 and LaSalle National Bank.

## ORDER ON MOTION FOR AUTHORITY TO USE CASH COLLATERAL

PAUL M. GLENN, Bankruptcy Judge.

**THIS CASE** came before the Court for hearing on the Motion for Authority to Use Cash Collateral filed by the Debtor, Venice–Oxford Associates Limited Partnership. The Debtor is the owner of an apartment complex in Sarasota County, Florida (the Property). In its Motion, the Debtor requests permission to use the rents generated from the apartment complex to pay its ordinary business expenses and to preserve the value of the Property.

The Debtor's primary secured creditors are Multifamily Mortgage Trust 1996–1 and LaSalle National Bank (Creditors). The Creditors claim that they are the holders of a first mortgage on the Debtor's Property. The Creditors also contend that they are the owners of all rents, including future rents, generated from the Property pursuant to a Final Judgment of Foreclosure entered in the Sarasota County Circuit Court prior to the filing of the Debtor's bankruptcy petition. Consequently, the Creditors assert that the rents are not property of the Debtor's bankruptcy estate, and oppose the Debtor's use of the rents as requested in the Motion.

### Procedural Background

On March 7, 1997, the Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the District of Maryland.

On March 21, 1997, the Debtor filed a Motion for Authority to Use Cash Collateral. In the motion, the Debtor requested authority to use "cash collateral in the form of rents and proceeds arising from the Debtor's property, pursuant to 11 U.S.C. § 363(c)(2)." A hearing was conducted, and on June 10, 1997, the Bankruptcy Court in Maryland entered an Order granting the motion in part. The Order states that the "Debtor has a property interest in the rents (the "Rents") collected from leases at the Debtor's residential apartment complex," and also states that the Creditors hold "an interest in the Rents." The Order authorizes the Debtor to pay "the reasonable and necessary expenses associated with the operations and maintenance of the Property for the limited period beginning on the petition date (March 7, 1997) and ending thirty (30) days from the entry date of this order." The Order also establishes a method for the management of the rents.

On the same date that the order was entered authorizing the temporary use of the rents, the Court also entered an order transferring the venue of the Chapter 11 case to the Bankruptcy Court for the Middle District of Florida.

After the case had been transferred, the Debtor filed an Emergency Motion for Authority to Use Cash Collateral. In the Emergency Motion, the Debtor again requests authority to use the rents paid by the tenants in the apartment complex "to pay the ordinary business expenses necessary to operate the debtor's business and to preserve and maintain the value of the property."

The Creditors filed an Objection and Memorandum of Law in Opposition to Debtor's Emergency Motion for Authority to Use Cash Collateral. In the Memorandum, the Creditors "object to the use of any of the rents as cash collateral since the Rents are *not* property of the estate, but instead are the sole property of Mortgage Trust and LaSalle by virtue of the Final Judgment." A copy of a Final Judgment of Foreclosure docketed in the Circuit Court for Sarasota County on February 13, 1997, is attached to the Objection and

Memorandum. Paragraph 16 of the Final Judgment states:

> All rents, issues, proceeds, income, revenue and profits arising from the Property ("Rents") described in the Loan Documents previously collected by Venice–Oxford and all Rents hereinafter generated from the Property shall forthwith be delivered to Plaintiffs and Plaintiffs are hereby declared the owner of all Rents. Further, all Rents deposited into the escrow account pursuant to this Court's Order dated October 16, 1996, shall forthwith be delivered to Plaintiffs.

The Creditors contend that the Final Judgment "divests Venice–Oxford of any interest in the rents, issues, proceeds, income, revenue and profits arising from the Property ("Rents") previously collected by Venice–Oxford and all Rents generated from the Property after the entry of the Final Judgment."

The issue in this case is whether rents generated from the Debtor's apartment complex constitute "cash collateral" within the meaning of § 363(a) of the Bankruptcy Code which the Debtor may use, sell, or lease pursuant to § 363(b)(1) of the Bankruptcy Code.

The Creditors assert that the Final Judgment has preclusive or collateral estoppel effect with respect to the ownership of the rents, and that ownership of the rents passed to the Creditors when the Final Judgment was entered pursuant to section 697.07 of the Florida Statutes. The Creditors assert that the Final Judgment of Foreclosure is a "final adjudication" within the meaning of that statute, and that this Court is bound to give the Final Judgment full faith and credit pursuant to 28 U.S.C. § 1738.

The Debtor contends that the issues presented in the foreclosure action were not identical to the issues presented in the cash collateral proceedings, and that ownership of the rents was never "actually litigated" in the state court foreclosure action. According to the Debtor, an issue must have been "actually litigated" in the prior proceeding before the doctrine of collateral estoppel can be invoked. Consequently, the Debtor asserts that collateral estoppel does not apply in this case to preclude litigation regarding the ownership of the rents.

## The State Court Action

The Debtor filed in this Court a copy of the state court pleadings file from the foreclosure case. The state court file reflects the following:

On or about August 12, 1996, the Creditors filed an action in the Circuit Court for Sarasota County, Florida to foreclose a mortgage on real property. In the Complaint, the Creditors allege that the Debtor "owns and operates a multi-unit rental apartment complex and other improvements on the real property which is the subject matter of this action," that the Creditors own and hold a mortgage note, mortgage, and security agreement with respect to the Property, and that the Debtor had failed to make the mortgage payments when due. Consequently, the Creditors sought a judgment foreclosing the mortgage and security interest created by the loan documents.

Also on August 12, 1996, the Creditors filed a Motion for Appointment of Receiver and Alternative Motion to Compel Deposit of Rents. In paragraph 8 of the motion, the Creditors allege that they had served the Debtor with written notice of default and a demand for the rents pursuant to Section 697.07 of the Florida Statutes. The Creditors requested, among other relief, the entry of an order compelling the Debtor to turn over to the Creditors "all rents, income, profits, deposits and account receivables in its possession at the time of the written demand and collected thereafter."

On September 27, 1996, the Debtor filed a Verified Amended Answer and Affirmative Defenses to the Complaint. The Affirmative Defenses include waiver and estoppel, breach of contract, failure of the Creditors to satisfy certain conditions pre-

cedent, the statute of limitations, and laches. On September 24, 1996, the Debtor served its Memorandum in Opposition to the Creditors' Motion for Appointment of Receiver and Alternative Motion to Compel Deposit of Rents. In this Memorandum, the Debtor primarily contends that the Creditors had failed to establish the Debtor's default under the loan documents, a prerequisite to an order compelling the deposit of rents, and also that the Creditors are estopped from declaring a default and seeking the deposit of rents because of the conduct of the Creditors' predecessors in continuing to accept payments from the Debtor after the occurrence of the alleged default.

On or about September 19, 1996, the Creditors filed a Memorandum of Law in Support of Motion for Appointment of Receiver and Alternative Motion to Compel Deposit of Rents. In the Memorandum, the Creditors argue that the assignment of rents contained in the loan documents was absolute, and that they are entitled to the rents pursuant to Section 697.07 of the Florida Statutes. According to the Creditors, Section 697.07 entitles them to the immediate turnover of all rents collected from the Property. The Creditors contend that the right is subject only to the delivery of written demand and the Debtor's failure to turn over the rents, and that both of these conditions had been satisfied.

On November 20, 1996, the Creditors filed a Motion for Summary Judgment. Paragraph 1 of the Motion for Summary Judgment states that "[t]his is an action to foreclose a mortgage on certain real property located in Sarasota County, Florida ("Property")." The motion then recites the history of the loan documents, the Debtor's default under the documents, the balance due to the Creditors, and the Debtor's affirmative defenses set forth in its Answer. The Creditors request that the Court enter a final summary judgment "and foreclose the interest of said defendant and all other persons or entities claiming under or against Mortgage Trust

and LaSalle's interest in the Property," and award reasonable fees and costs to the Creditors. The Motion does not include any specific reference to the assignment of rents under the loan documents, or to the Creditors' entitlement either to collected or future rents.

On October 16, 1996, the Circuit Court entered an Order Denying Motion for Appointment of Receiver and Granting Alternative Motion to Compel Deposit of Rents. In granting the Motion to Compel Deposit of Rents, the state court ordered that all rents collected by the Debtor as of the date of the order "and all Rents collected thereafter net of amounts payable by Venice–Oxford to pay reasonable, necessary and ordinary expenses solely to protect, preserve, and operate the real property ("Net Rents") shall forthwith be deposited into a jointly controlled interest bearing account ("Escrow Account").... No monies shall be disbursed from the Escrow Account without the written agreement of Plaintiffs and Venice–Oxford or Court order."

On October 25, 1996, the Creditors filed a Motion for Reconsideration of the Order Denying the Motion for Appointment of Receiver and Granting Alternative Motion to Compel Deposit of Rents. The Motion was filed on the basis that the Order did not provide the Creditors with the protection intended by Section 697.07 of the Florida Statutes. The focus of the Motion for Reconsideration is the Creditors' claim to "collected rents:"

1. Section 697.07(3) defines "collected rents" as all rents in the possession of the mortgagor at the time that written demand was made for turnover of the rents, or rents collected thereafter. (Motion for Reconsideration, ¶ 7.)

2. The subsection further provides that an assignment of rents shall be enforceable upon the mortgagor's default and the mortgagee's written demand for the rents, and that the mortgagor shall turn over the "collected rents" at that time. (Motion, ¶ 7.)

3. A court may require the mortgagor to deposit the "collected rents" into the registry of the court pending final adjudication of an action. (Motion, ¶ 8.)

4. Consequently, the Creditors contend that the Debtor in this case is required to turn over or deposit all rents in its possession at the time that the Creditors made written demand, or rents collected after the written demand. (Motion, ¶ 6.)

In the Motion for Reconsideration, the Creditors also asserted that the Order compelling the deposit of rents allowed the Debtor to deduct "amounts payable" from collected rents, rather than amounts "actually incurred."

The Creditors' Motion for Reconsideration was heard on October 29, 1996, and an Order Denying the Motion was entered on November 6, 1996.

On February 13, 1997, a hearing was conducted on the Creditors' Motion for Summary Judgment. At the hearing, the Creditors argued that the record established their entitlement to the entry of a summary judgment because (1) the loan documents had been authenticated; (2) the Debtor had defaulted in its payment obligations; and (3) the Creditors had served a declaration of default and written demand on the Debtor. The Creditors also argued that the Debtor's affidavit in opposition to the motion for summary judgment was legally insufficient to create any issues of fact, and that the Debtor's affirmative defenses did not preclude the entry of a summary judgment. In response, the Debtor primarily contended that the Creditors' predecessor had accepted partial payments prior to the filing of the foreclosure action, and that the Creditors were bound by the actions of their predecessors and therefore were estopped from declaring a default and foreclosing the mortgage. No reference was made by either party at the hearing either to the assignment of rents or to the effect of Fla. Stat. § 697 in determining the ownership of such rents.

The Creditors' attorney prepared the proposed final summary judgment and provided a copy of the proposed judgment to the Debtor's attorney shortly before the hearing. Debtor's counsel reviewed the form of judgment after the hearing without comment.

On February 13, 1997, the Circuit Court entered the Final Judgment of Foreclosure. The Final Judgment forecloses the Debtor's claims in the real property and personal property described in the loan documents, and determines that the Debtor owed the Creditors a total sum of $6,693,567.50. The Final Judgment also scheduled the foreclosure sale of the property for March 14, 1997, and set forth the procedures for sale to the highest bidder, filing the Certificate of Title, distribution of the sale proceeds, reporting the existence of any surplus or deficiency, and filing the Certificate of Sale.

Paragraph 15 of the Final Judgment provides that, upon the judicial sale and the filing of the Certificate of Sale and Certificate of Title by the Clerk, the successful purchaser "shall forthwith without delay, be given possession of the property and personal property."

Paragraph 16 of the Final Judgment provides:

All rents, issues, proceeds, income, revenue and profits arising from the Property ("Rents") described in the Loan Documents previously collected by Venice–Oxford and all Rents hereinafter generated from the Property shall forthwith be delivered to Plaintiffs and Plaintiffs are hereby declared the owner of all Rents. . . .

Paragraph 16 also provided for the delivery to the Creditors of the rents previously deposited into the escrow account in accordance with the Court's prior order.

The Debtor filed its Chapter 11 petition seven days before the foreclosure sale scheduled pursuant to the Final Judgment, and the sale was stayed pursuant to section 362 of the Bankruptcy Code.

## Discussion

On October 27, 1982, the Debtor executed a Mortgage in favor of Shearson/American Express Mortgage Corporation to secure a Mortgage Note executed on the same date. The property described in the Mortgage includes the real property on which the apartment complex is located, all improvements, and all rents "accruing and to accrue from said premises." Paragraph 4 of the Mortgage states:

> 4. That all rents, profits and income from the property covered by this mortgage are hereby assigned to the mortgagee for the purpose of discharging the debt hereby secured. Permission is hereby given to mortgagor so long as no default exists hereunder, to collect such rents, profits and income.

The Mortgage ultimately was assigned to the Creditors following several intermediate assignments. On August 2, 1996, the Creditors mailed to the Debtors a written demand for the total amount due under the Mortgage Note and Mortgage "as a result of your material defaults under the Loan Documents." The letter also stated:

> Further, pursuant to the Loan Documents and Florida Statute § 697.07, demand is hereby made that all rents, issues, proceeds, and profits accruing and to accrue ("Rents") arising from the property described in the Loan Documents ("Property") in your possession or collected hereafter should be forthwith be turned over....

The Debtor did not comply with the Creditors' demands, and the Creditors filed the foreclosure action in the Sarasota County Circuit Court on August 12, 1996.

### A. Mortgages, Rents, and Florida Statute § 697.07 (1993).

██ "The Lien Theory of mortgages, as established in Florida law, articulates the legal philosophy associated with all parties' rights and duties encompassed in any mortgage transaction." Thomas E. Baynes, Jr. *Mortgages, The Law in Florida,* § 1–1 (1993). "A mortgage shall be held to be a specific lien on the property therein described, and not a conveyance of the legal title or of the right of possession." Fla. Stat. § 697.02. This statute appears to have its origins in the Laws of Florida of 1853.

██ The entitlement of mortgagees to rents, and the validity and effects of pledges of rents, have been the subjects of longstanding caselaw in Florida. See *Pasco v. Gamble,* 15 Fla. 562 (1876); *Carolina Portland Cement Co. v. Baumgartner,* 99 Fla. 987, 128 So. 241 (1930); *White v. Anthony Investment Co.,* 119 Fla. 108, 160 So. 881 (1935). These cases established several principles. Generally, a mortgagor is not accountable to the mortgagee for rents. Under certain circumstances, however, a mortgagee may have a right to rents. *Pasco v. Gamble,* 15 Fla. at 564, 570. A mortgagor may pledge rents along with the land as security for the debt. *Carolina Portland Cement Co. v. Baumgartner,* 128 So. at 245. A mortgagee may be entitled to the appointment of a receiver to collect pledged rents. *Carolina Portland Cement Co. v. Baumgartner,* 128 So. at 249, 250. The mortgagee may be entitled to receive the pledged rents, to be credited to the mortgage debt, from the time he takes possession of the property either by consent of the owner or through the appointment of a receiver in foreclosure proceedings. *White v. Anthony Investment Co.,* 160 So. at 882.

In 1987, the Florida Legislature enacted Section 697.07, Florida Statutes, to address the assignment of rents. The provisions of the statute as it was initially enacted[1] resulted in divergent views regarding its application. Compare *In re 163rd Street Mini Storage, Inc.,* 113 B.R. 87, 90 (Bankr.S.D.Fla.1990) (Weaver, J.)

---

1. "A mortgage may provide for an assignment of rents. If such assignment is made, such assignment shall be absolute upon the mortgagor's default, becoming operative upon written demand made by the mortgagee...." Fla. Stat. § 697.07 (1987).

(§ 697.07 creates an absolute transfer of the ownership interest in the rents, upon default and written demand to the mortgagor) with *In re One Fourth Street North, Ltd.,* 103 B.R. 320, 321 (Bankr. M.D.Fla.1989) (Paskay, C.J.) (" § 670.07 was not intended to constitute a complete derogation of the law that had been well settled in this state," and "was not meant to create an outright or absolute transfer of ownership interest in rents.") and *In re Growers Properties,* 117 B.R. 1015, 1016 n. 1 (Bankr.M.D.Fla.1990) (Baynes, J.) ("Any reading of the statute to create an absolute transfer of all interest in rents not only goes against the mortgage lien theory, but eliminates any reorganization by a Chapter 11 debtor").

In 1993, the Florida Legislature completely revised Section 697.07, and the statute now contains extensive provisions relating to the assignment of rents. The section now contains eight subsections.

Subsection 1 provides that either a mortgage or a separate instrument may create an assignment of rents as security for the repayment of a debt.

■ Subsection 2 provides:

(2) If such an assignment is made, the mortgagee shall hold a lien on the rents, and the lien created by the assignment shall be perfected and effective against third parties upon recordation of the mortgage or separate instrument in the public records of the county in which the real property is located, according to law.

The assignment is not an automatic, complete transfer of all rights in the rents, but instead only creates a lien on the rents which may be perfected by recordation.

■■ Subsection 3 provides:

(3) Unless otherwise agreed to in writing by the mortgagee and mortgagor, the assignment of rents shall be enforceable upon the mortgagor's default and written demand for the rents made by the mortgagee to the mortgagor, whereupon the mortgagor shall turn over all rents in the possession of the mortgagor at the time of the written demand or collected thereafter (the "collected rents") to the mortgagee less payment of any expenses authorized by the mortgagee in writing.

The assignment is "enforceable" upon the mortgagor's default and a written demand for the rents by the lender. Upon demand, the mortgagor is to turn over all "collected rents," defined as rents in the possession of the mortgagor at the time of the demand and rents collected by the mortgagor after the date of the demand.

■ Subsection 4 provides:

(4) Upon application by the mortgagee or mortgagor, in a foreclosure action, and notwithstanding any asserted defenses or counterclaims of the mortgagor, a court of competent jurisdiction, pending final adjudication of any action, may require the mortgagor to deposit the collected rents into the registry of the court, or in such other depository as the court may designate. However, the court may authorize the use of the collected rents, before deposit into the registry of the court or other depository, to:

(a) Pay the reasonable expenses solely to protect, preserve, and operate the real property, including, without limitation, real estate taxes and insurance;

(b) Escrow sums required by the mortgagor or separate assignment-of-rents instrument; and

(c) Make payments to the mortgagee.

In a foreclosure action, "pending final adjudication of any action," the court may require the mortgagor to deposit the collected rents into a designated depository. The court may also permit collected rents to be used to pay reasonable expenses for the benefit of the property, however, and such payments may be made before any remaining or net rents are deposited into the depository. The court may further permit collected rents to be used to make payments to the mortgagee.

Subsection 5 provides:

(5) Nothing herein shall preclude the court from granting any other appropriate relief regarding the collected rents pending final adjudication of the action. The undisbursed collected rents remaining in the possession of the mortgagor or in the registry of the court, or in such other depository as ordered by the court, shall be disbursed at the conclusion of the action in accordance with the court's final judgment or decree.

The court may authorize other interim measures regarding the collected rents "pending final adjudication of the action." Final disbursement of the collected rents shall be made at the conclusion of the action in accordance with the final judgment.

Subsection 6 provides for an expedited hearing on an application to enforce the assignment of rents, and also provides that the procedures set forth in section 697.07 are in addition to any other legal or contractual remedies that the parties may have.

██ Subsection 7 provides that the statute does not affect the lien priorities that existed with respect to the collected rents before the written demand for the rents by the lender. The subsection also provides:

(7) ... A mortgagee's enforcement of its assignments of rents under this statute shall not operate to transfer title to any rents not received by the mortgagee.

Although a lender may acquire title to rents actually received by it, the lender's compliance with the statute, without more, does not transfer ownership of any other rents arising from the property.

Subsection 8 relates to the application of rents received by the lender, and provides that any rents received by the lender must be applied in accordance with the loan documents.

██ It is now clear that Section 697.07 does not provide for the transfer of ownership of rents without the mortgagor's consent or court action. Pursuant to subsec-tion 2, an assignment of rents is not an absolute transfer, but creates only a lien on the rents. By serving a written demand pursuant to subsection 3, a lender is entitled to the turnover from the mortgagor of "collected rents," as defined in the subsection. If the rents are not turned over and a foreclosure action is filed, a court may require the mortgagor to deposit rents in a designated account "pending final adjudication" of the action. The court may also order that the rents be used to pay expenses associated with the property and to make payments to the mortgagee. Clearly these measures are intended to preserve the rents for the benefit of interested parties until the various claims to the property can be fully determined. The rationale for the section may be that, because rents in the form of cash are subject to rapid dissipation, a mechanism is necessary to prevent such dissipation while the rights of the parties are being determined. In any event, the primary consequence of the statute is that net rents are temporarily deposited and held until a "final adjudication" is made of the parties' rights. Finally, and perhaps most importantly, subsection 7 expressly states that a lender's compliance with the statute does not automatically result in the transfer of title to the rents if the lender has not actually received possession of the rents.

Accordingly, compliance with the statute as amended does not effect a transfer of title to the rents to the mortgagee if the mortgagor does not turn the rents over to the mortgagee.

The Debtor in this case was not divested of its interest in the rents from the apartment complex solely because the Creditors had pursued their remedies under Section 697.07 of the Florida Statutes.

**B.   The Final Judgment and Collateral Estoppel.**

██ As set forth above, paragraph 16 of the Final Judgment of Foreclosure

states that the Creditors are the owners of all rents previously collected by the Debtor, and also of all rents generated from the apartment complex after the date of the Judgment. The question is whether this language effectively divested the Debtor of all of its interest in the rents, including future rents, generated by the property, so that such rents did not become property of the Debtor's bankruptcy estate upon the filing of the Chapter 11 petition.

The key facts presented to the court in *In re Brackin*, 158 B.R. 249 (Bankr.M.D.Fla.1993)(Paskay, C.J.) are materially the same as those present in this case. In *Brackin*, the debtor had executed a mortgage which included an assignment of rents to the creditor. After the debtor defaulted, the creditor made a written demand for all rents from the mortgaged property, in addition to payment of the total balance due under the loan documents. *In re Brackin*, 158 B.R. at 250. The creditor then filed a foreclosure action in the Hillsborough County Circuit Court, and the Circuit Court subsequently entered a Final Judgment In Foreclosure. *Id.* In the Final Judgment, the Circuit Court "expressly determined that Seaboard has an absolute ownership interest in and to said rental revenues in accordance with Florida Statutes § 697.07." *Id.* The Final Judgment also provided that no sale would be scheduled so long as the debtor made certain payments called for by the judgment. The debtor again defaulted, and a public sale of the property was scheduled. Five days before the scheduled sale, the debtor filed his Chapter 11 petition. *Id.* In the bankruptcy case, the creditor filed a motion to prohibit the debtor's use of the rents, and for the entry of an order allowing the creditor to collect all future rents. *Id.* at 249. The creditor asserted that it was the owner of the rents pursuant to the Final Judgment of Foreclosure and Section 697.07 of the Florida Statutes, and that the rents therefore were not property of the debtor's bankruptcy estate. *Id.* at 250.

Judge Paskay first cited his prior ruling in *In re One Fourth Street North, Ltd.*, 103 B.R. 320 (Bankr.M.D.Fla.1989) for the proposition that Section 697.07 only creates a simplified method to perfect a creditor's right to sequester rents, and contemplates further judicial proceedings before a determination is made regarding a creditor's right to the rents. Judge Paskay then states:

> The crucial difference between One Fourth Street and the instant case is that in the instant case the Circuit Court entered a final judgment adjudicating the right to the rent, thereby triggering the language in the statute.
>
> ... [T]he Circuit Court in the present case in no way restrained Seaboard's use of the rental funds. Thus there is no valid reason to find anything but that the Final Judgment entered by the Circuit Court on December 6, 1990, completely divested the Debtor of any interest he had in the rents and profits derived from the mortgaged property.

*Id.* at 251. The Court therefore concluded that:

> [B]ased on the Debtor's default and entry of Final Judgment divesting the Debtor of any interest he had in the rents, and Seaboard's compliance with the provisions of § 697.07, the Assignment of Rents operated as an absolute transfer of the income stream to the mortgagee prior to the filing of the Bankruptcy Petition. See *In re Sunrise Indus. Development Corp.*, 121 B.R. 911 (Bankr.S.D.Fla.1990).

*Id.* at 252. The Court directed the debtor to deliver all rental revenue to the creditor immediately upon receipt, and to do all things necessary to ensure that future rents were paid directly to the creditor. *Id.* Although Section 697.07 was amended after *Brackin* was entered, the particular amendment does not affect the reasoning underlying the decision.

Judge Paskay's opinion in *Brackin* had been foreshadowed by the earlier decision of Judge Mark in *In re Shoppes of Hills-*

*boro,* 131 B.R. 1018 (Bankr.S.D.Fla.1991). In *Shoppes,* the debtor, as the owner of a shopping center, executed a note, mortgage, and assignment of leases, rents, and profits in favor of Meritor Savings Bank. Meritor subsequently declared a default by the debtor and made a written demand for turnover of rents pursuant to section 697.07 of the Florida Statutes. *In re Shoppes,* 131 B.R. at 1019. Meritor then commenced a foreclosure action in state court and filed a motion in the foreclosure action to enforce the assignment and compel the debtor to pay the collected rents into the registry of the court. The court entered an order granting the motion and directing the debtor to deposit the rents into the state court registry. The debtor filed a Chapter 11 petition several months later. The issue framed by Judge Mark was whether the rents generated from the shopping center were property of the debtor's estate at the time that the Chapter 11 petition was filed. *Id.*

Judge Mark concluded that the rents were property of the estate. *Id.* at 1023. In reaching this decision, the Court agreed with Judge Paskay's opinion in *One Fourth Street, supra,* together with a state appellate decision in *Nassau Square Associates, Ltd. v. Insurance Commissioner,* 579 So.2d 259 (Fla. 4th DCA 1991), determining that Section 697.07 does not effectuate an absolute transfer of rents, but instead contemplates further judicial proceedings to transfer ownership. *In re Shoppes,* 131 B.R. at 1023. Of significance to this case, however, is Judge Mark's clear opinion that the result in *Shoppes* may have been different had the state court made an adjudication of Meritor's right to the rents in the foreclosure action prior to the filing of the bankruptcy petition. One of three "undisputed facts" upon which the Court relied in reaching its decision was that the state court had not adjudicated Meritor's right to the rents before the bankruptcy case was filed. *Id.* at 1019. The Court therefore commented:

Other issues remain including interpretation of the statutory phrase "pending adjudication of the mortgagee's right to the rent" which modifies the prior phrase providing for the deposit of the rents into the court registry. *Does it mean pending a final judgment of foreclosure with title to the rents passing to the mortgagee only after a final judgment?* Alternatively, it could contemplate a preliminary adjudication by the state court which would simply determine whether the mortgagee had a valid assignment, whether the note was in default and whether the mortgagee had made proper written demand under the statute.

I do not decide that issue because there was no preliminary or final adjudication in the state action prior to the Chapter 11 filing in this case.

*Id.* at 1023. (Emphasis supplied.) The Court's conclusion, therefore, is carefully limited as follows:

In cases where pre-bankruptcy implementation of § 697.07 results in the deposit of rents into the state court registry *and there has been no preliminary or final adjudication of the mortgagee's rights by the state court,* the rents in the state court registry and the future stream of rents are property of the estate upon filing of a Chapter 11.

*Id.* (Emphasis supplied.) Consequently, it appears that the Court may have determined that future rents were not property of the estate if a judgment had been entered in the foreclosure action prior to the filing of the Chapter 11 petition, although Judge Mark was not required to decide what form the judgment must take to divest the debtor of title to the rents. It also appears, however, that the Court considered the possibility that a final judgment of foreclosure may be an "adjudication" sufficient to effect such a transfer.

In the case before this Court, of course, a Final Judgment of Foreclosure was in fact entered prior to the filing of the Chapter 11 petition, and the Final Judgment

contained a provision that expressly declared that the Creditors were the owners of all rents. According to Judge Paskay's decision in *Brackin,* therefore, the prepetition order completely divested the Debtor of any interest that it had in the rents, and the Final Judgment coupled with the Creditors' compliance with Section 697.07 operated as an absolute transfer of the income stream generated by the Debtor's apartment complex. See *In re Brackin,* 158 B.R. at 251–52. The *Brackin* decision does not state that it is based on the doctrine of collateral estoppel or that the bankruptcy court was applying full faith and credit to the state court decision. Instead, the Court noted only that the state court did not place any restrictions on the lender's use of the rents in that case, and that "there is no valid reason" to upset the Circuit Court's prepetition judgment. *Id.* at 251.

The Creditors in this case contend that the Circuit Court's Final Judgment has preclusive effect in this Court, and that the preclusive effect is found by applying Florida's law of collateral estoppel.

The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute, which provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. This statute directs a federal court to refer to the preclusion law of the State in which judgment was rendered.

*Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 380, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). When considering the collateral estoppel effect of a judgment from a Florida court, the Eleventh Circuit Court of Appeals stated:

If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect. *In re Touchstone,* 149 B.R. 721, 725 (Bankr.S.D.Fla.1993). Under Florida law, the following elements must be established before collateral estoppel may be invoked: (1) the issue at stake must be identical to the one decided in the prior litigation; (2) the issue must have been actually litigated in the prior proceeding; (3) the prior determination of the issue must have been a critical and necessary part of the judgment in that earlier decision; and (4) the standard of proof in the prior action must have been at least as stringent as the standard of proof in the later case.

*In re St. Laurent,* 991 F.2d 672, 675–76 (11th Cir.1993) (Citations omitted).

The Debtor contends that the Circuit Court Final Judgment does not have preclusive effect in this case because (1) the issues in the foreclosure action are not identical to the issue in the bankruptcy case; (2) the ownership of rents was not "actually litigated" in the foreclosure action; and (3) the ownership of the rents was not a critical and necessary part of the foreclosure action.

The Court concludes that all the elements of collateral estoppel are satisfied, and that the state court's Final Judgment determining the ownership of the rents should be given preclusive effect.

The Mortgage was executed by the Debtor on October 27, 1982. The property which was mortgaged includes all rents accruing and to accrue from the apartments. The assignment of rents is also contained in the Mortgage. The Complaint filed in the Circuit Court on August 12, 1996, commenced an action to foreclose a "mortgage." (Complaint, ¶ 6). "Mortgage" was defined in paragraph 7 of the Complaint as the Mortgage signed by the Debtor on October 27, 1982. The Mortgage containing the description of the mortgaged property and the assignment of rents was attached to the Complaint as Exhibit B. In the Complaint, the Creditors allege that the Debtor defaulted under the

loan documents, and "demand judgment foreclosing the Mortgage." Accordingly, the document which includes the description of the mortgaged property and the assignment of rents was the subject of the foreclosure action.

Further, as a proceeding within the foreclosure action, the Creditors filed a Motion to Compel the Deposit of Rents into the court registry, which of course focused specifically on the rents generated from the apartment complex. The Motion cites Section 697.07 of the Florida Statutes.

The Debtor responded both to the initial Complaint and to the Motion to Compel Deposit of Rents. The gravamen of the Debtor's response was that no default actually existed under the loan documents, or that the Creditors were estopped from asserting such a default, because the Creditors' predecessors had accepted payments after a delinquency had occurred. Consequently, the Debtor argued that the Creditors were not entitled to foreclose the Mortgage or to the rents.

After the state court entered an Order compelling the deposit of rents, only the Creditors filed a motion for reconsideration of the order. The motion for reconsideration again cited Section 697.07, and contended that the order compelling the deposit did not provide the Creditors with all of the protections afforded by the statute.

The Debtor subsequently appeared at the hearing to consider the Motion for Summary Judgment filed by the Creditors. The primary defense again raised by the Debtor at that hearing was that the Creditors were not entitled to declare a default in view of the conduct of their predecessors. The Debtor's attorney was provided with a copy of the proposed Final Judgment shortly before the hearing, reviewed the Judgment following the hearing, and did not comment on its form or content.

The Creditors were foreclosing a Mortgage in the state court case. It is funda-mental that the ultimate objective of a foreclosure action is the sale of the property subject to the mortgage or security agreement, and the application of the proceeds from the sale to reduce or satisfy the obligation owed to the secured party. See, for example, Fla. Stat. § 702.09. As the Debtor points out, it is also fundamental that the ownership of rents follows the ownership of the property from which they arise. However, in this case the Debtor pledged and assigned its interest in the rents, including future rents, to secure the debt, and the Creditors sought to enforce that assignment. Both the state court order compelling the deposit of rents and Fla. Stat. § 697.07 are clear that the disposition of rents was subject to final determination by the state court. Accordingly, the ultimate consequence of the foreclosure action would be the sale of the collateral covered by the Mortgage and a determination of the disposition of the rents which were pledged and assigned.

It was clear from the outset of the foreclosure action that the loss of the property, including the rents, was at stake in the proceeding. The record nowhere reflects that the Creditors intended to foreclose only on the underlying real property, but allow the Debtor to retain the income stream. On the contrary, the Creditors' sought to enforce their rights under the assignment of rents and to compel the deposit of rents into the court registry. These actions indicate that the Creditors were foreclosing on all of the collateral described in the Mortgage.

If the Debtor had any defenses to the enforcement of the assignment of rents or the foreclosure of the rents, therefore, it could have asserted those defenses in the foreclosure action. The Debtor was on notice that all of the Creditors' collateral was being foreclosed, including the rents, and the Debtor had the opportunity to raise any defenses that it had to such foreclosure.

The issue in this case, the ownership of the rents, is identical to the issue regard-

ing the ownership of rents in the foreclosure action.

The issue was actually litigated in the state court proceeding. The Bankruptcy Court assessed this requirement for collateral estoppel in *In re Kecskes,* 136 B.R. 578 (Bankr.S.D.Fla.1992) (Mark, J.). In *Kecskes,* a state court judgment had determined that the debtor had filed fraudulent liens against the plaintiff's property and awarded compensatory and punitive damages to the plaintiff. *In re Kecskes,* 136 B.R. at 580. The debtor subsequently filed a chapter 7 bankruptcy petition, and the plaintiff filed a complaint to determine that the debt evidenced by the state court judgment was nondischargeable under section 523(a)(6). The plaintiff also asserted that the debtor was precluded from relitigating the elements of its dischargeability claim because they already had been decided by the state court. *Id.* at 581. The debtor contended that collateral estoppel did not apply because he had not been placed on sufficient notice of the extent of his liability or the amount of the punitive damages to which he was exposed, and that the issue therefore was not actually litigated in the state court. *Id.*

The bankruptcy court determined that the key factor under Florida law regarding the "actual litigation" of an issue is whether the party had "an adequate opportunity to litigate." *Id.* at 583. The court noted that, under Florida law, even a default judgment may be given preclusive effect if the defendant had an adequate opportunity to litigate. *Id.* In *Kecskes,* therefore, the bankruptcy court found that the debtor had received an adequate opportunity to litigate, since the plaintiff in the state court case had cited the statutory basis for the award of punitive damages and included such an award in its request for relief. *Id.* Since the debtor was placed on notice of this component of the lawsuit, he received an "opportunity to litigate," even though he elected not to appear at the state court proceedings. See also *Marulanda v. Marrero,* 162 B.R. 20, 24 (S.D.Fla. 1993) (the "core issues" litigated in the state court action were the same as the issues raised in the bankruptcy proceeding, even though the claim was captioned differently in the state court action.)

Finally, the determination of the disposition of rents was a critical and necessary part of the judgment in the state court action. Florida Statutes § 697.07(4) provides that the state court may require the rents to be deposited into a depository "pending final adjudication" of the action. Florida Statutes § 697.07(5) provides that undisbursed collected rents shall be disbursed in accordance with the court's final judgment or decree. In its order requiring the rents to be deposited, the state court provided that no disbursements should be made without court order. Accordingly, the disposition of rents was a critical and necessary part of the Final Judgment.

The Debtor argues with specific reference to future rents that the elements of collateral estoppel are not satisfied. However, in the Mortgage, the Debtor mortgaged all rents "accruing and to accrue from said premises" and assigned "all rents, profits and income from the property." Florida Statutes Section 697.07(3) addresses all rents in the possession of the mortgagor at the time of the written demand for rents and all rents "collected thereafter." In the Final Judgment, the state court declared the creditors to be the owners of all rents "previously collected ... and all Rents hereinafter generated from the Property." All of the rents which were mortgaged were in controversy in the state court action, and all elements of collateral estoppel are satisfied.

### Conclusion

For the reasons expressed above, the Court concludes that all of the elements of collateral estoppel are present in this case, and that the Debtor is precluded from litigating the ownership of the rents in this bankruptcy case. The Final Judgment entered by the Circuit Court divested the Debtor of ownership of the rents prior to

the filing of the bankruptcy petition, the rents do not constitute property of the Debtor's estate, and do not constitute cash collateral that the Debtor may use, sell, or lease under Section 363(b)(1) of the Bankruptcy Code. The Debtor's Motion for Authority to Use Cash Collateral should be denied.

Accordingly:

**IT IS ORDERED** that the Motion for Authority to Use Cash Collateral filed by the Debtor, Venice–Oxford Limited Partnership, is denied.